Mark D. NASON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8673.

Court of Appeals of Alaska.

Dec. 3, 2004.

John P. Morrison, Assistant Public Defender, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Mark D. Nason was convicted of first-degree assault, AS 11.41.200(a), and he is currently serving a prison sentence at the Spring Creek Correctional Center. Because Nason's offense is a felony "crime against a person" under AS 11.41, Nason was asked to submit to a cheek swabbing procedure that would preserve a sample of his DNA for inclusion in Alaska's DNA database. Under AS 44.41.035(b), the Department of Public Safety is directed to "collect ... a blood sample, oral sample, or both, from ... a person convicted of a crime against a person ... under AS 11" for inclusion in the state's DNA registration system.

Citing privacy concerns, Nason refused to provide a DNA sample. Based on this refusal, Nason was convicted of violating AS 11.56.760(a)(2), which makes it a crime for any person who has been convicted of an offense listed in AS 44.41.035(b) to refuse to provide the statutorily mandated DNA sam-

ple at the request of a correctional officer or police officer.

In this appeal, Nason attacks Alaska's DNA collection statute—by which we mean the combination of AS 44.41.035(b) (specifying the persons whose DNA is to be collected) and AS 11.56.760(a) (making it a crime to fail to comply with an authorized request for DNA). Nason contends that the DNA collection statute unlawfully infringes his Fourth Amendment right to be free from unreasonable searches. He also argues that the statute infringes the right to privacy implicitly guaranteed by the United States Constitution[1] and explicitly guaranteed by Article I, Section 22 of the Alaska Constitution. Finally, Nason argues that AS 44.41.035(b) violates Alaska's constitutional guarantee of equal protection under the law[2] because it only requires DNA samples from people convicted of some felonies (felonies that qualify as "crimes against a person"), while people convicted of other serious crimes are not required to provide a DNA sample.

For the reasons explained here, we conclude that Nason has failed to rebut the presumptive constitutionality of the DNA collection statute. We therefore uphold the statute in Nason's case, but we do so without reaching the merits of potential Fourth Amendment and right of privacy attacks that might be brought against the statute.

We further hold that, assuming the constitutionality of the DNA collection statute, the Alaska Legislature did not violate the equal protection clause when it decided to require collection of DNA samples from defendants convicted of a felony crime against a person under AS 11.41, as opposed to other felonies.

We note that, since the time Nason was prosecuted, the legislature has amended AS 44.41.035(b) to require collection of DNA samples from all persons convicted of *any* felony under our criminal code (Title 11), as well as any misdemeanor "crime against a person" (*i.e.*, any misdemeanor defined in AS 11.41), or any felony defined in AS 28.35 (*i.e.*,

felony driving under the influence, felony breath-test refusal, and felony hit-and-run), or any misdemeanor offense for which sex offender registration is required. *See* SLA 2003, ch. 88, § 5. We express no opinion on the constitutionality of this broader DNA collection.

*Nason's Fourth Amendment and right of privacy attacks on the DNA collection statute*

For the most part, Nason's constitutional attacks on the DNA collection statute consist of conclusory assertions (1) that he has a fundamental right of privacy in his DNA, (2) that the State has no overriding governmental interest in collecting his DNA, and (3) that collection of his DNA is an unreasonable, suspicionless search.

Nason cites only one case on point: *United States v. Kincade (I)*, 345 F.3d 1095 (9th Cir.2003), in which a panel of the Ninth Circuit (by a 2 to 1 vote) declared that a federal statute requiring the collection of DNA samples from parolees constituted an unreasonable search in violation of the Fourth Amendment. However, the two-judge majority in *Kincade (I)* conceded that all of the existing case law—comprising some two dozen federal and state decisions—was contrary to their position.[3] Indeed, an earlier panel of the Ninth Circuit had upheld Oregon's DNA collection law against similar constitutional attacks: *Rise v. Oregon*, 59 F.3d 1556, 1559–1562 (9th Cir.1995).

Nason's briefs to this Court do not discuss (or even mention) any of this contrary case law. Moreover, in the months since Nason submitted his briefs, the Ninth Circuit (sitting *en banc*) reversed the *Kincade* panel decision and upheld the constitutionality of the federal DNA collection law: *United States v. Kincade (II)*, 379 F.3d 813 (9th Cir.2004).

This second *Kincade* decision lists three dozen federal and state decisions upholding the federal DNA collection law and similar

---

**1.** *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

**2.** Alaska Constitution, Article I, Section 1.

**3.** *Id.* at 1109–1110 & nn. 27–29.

state laws against constitutional challenge.[4] There is essentially no authority to the contrary.[5] (The Ninth Circuit stated that it could find only two decisions, both of them issued by single judges, in which DNA collection statutes were struck down.[6] One of these was a federal district court decision from California, now superseded by the *en banc* decision in *Kincade*. The other was a trial court decision from Maryland which has now been reversed by the Maryland Court of Appeals: *see State v. Raines*, 383 Md. 1, 857 A.2d 19 (2004).)

An appellate court must begin with the presumption that a statute is constitutional.[7] To succeed in challenging the DNA collection statute, Nason must rebut this presumption of constitutionality. Nason has cited only one court decision in his favor, and that decision has been reversed. Moreover, Nason fails to mention or address the fact that dozens of federal and state court decisions from across the country are virtually unanimous in upholding DNA collection statutes against the types of Fourth Amendment and privacy challenges that Nason presents here.

(We acknowledge that, in his reply brief, Nason presents four pages of substantive authority for his positions (1) that DNA collection is a greater intrusion than fingerprinting, and (2) that DNA collection potentially violates the Fourth Amendment because it might be viewed as a suspicionless "special needs" search, and because it might be viewed as motivated solely by law enforcement purposes. However, Nason still cites no cases directly on point, and he still fails to acknowledge that appellate courts from around the country have rejected these same arguments. More importantly, Nason fails to address the reasoning

of those courts or explain why he believes that this reasoning is mistaken.)

Given this briefing, we conclude that Nason has failed to rebut the presumptive constitutionality of Alaska's DNA collection statute.[8] We therefore uphold the statute in this case. At the same time, however, we refrain from addressing the merits of the potential constitutional attacks that might be brought against the statute—with the exception of Nason's equal protection attack, which we discuss in the next section of this opinion. And because we do not address the merits of the potential attacks on the DNA collection statute, we need not decide the potential justifications for the DNA collection authorized by that statute.

Readers may wonder why we refrain from deciding these issues when, as explained above, appellate courts in this country are virtually unanimous in upholding statutes like ours. The problem is that, although courts have unanimously upheld DNA collection statutes, the courts are divided concerning the precise constitutional basis for DNA collection. Some judges view DNA as simply another form of prisoner identification, similar to the photographing and fingerprinting procedures that are routinely conducted on all prisoners, even before conviction. Other judges view DNA collection as a warrantless search that is nevertheless a reasonable exception to the warrant requirement under a "totality of circumstances" analysis. And still other judges uphold DNA collection under the "special needs" doctrine, despite the obvious usefulness of DNA identification for law enforcement purposes.

Moreover, even though courts unanimously uphold these statutes, the votes within each court are far from unanimous. For example, the *en banc* decision in *Kincade (II)* was

---

**4.** *Kincade (II)*, 379 F.3d at 830–31.

**5.** *See* Robin Cheryl Miller, Annotation: "Validity, Construction, and Operation of State DNA Database Statutes", 76 A.L.R.5th 239 (2000).

**6.** *Kincade (II)*, 379 F.3d at 831 n. 25.

**7.** *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 899–900 (Alaska 2003).

**8.** *See A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) (finding that the appellant waived several points on appeal because the appellant's arguments on these points were "cursory and undeveloped" and were not supported by substantive discussions of pertinent legal authority); *Garcia v. State*, 947 P.2d 1363, 1364 n. 1 (Alaska App. 1997) (finding that the appellants failed to preserve a point on appeal because they "presented a ... conclusory argument" that "fail[ed] to address [pertinent] legal authorities").

decided by a 6 to 5 vote. The six judges who voted to uphold the DNA collection statute could not agree on a constitutional rationale for doing so,[9] and the five judges who thought the statute was unconstitutional wrote three separate dissents (two of them vehement).[10] Similarly, the Maryland Court of Appeals decision in *State v. Raines* was decided by a 4 to 3 vote. Again, the four judges who voted to uphold the Maryland statute could not agree on a constitutional rationale for doing so,[11] and Chief Judge Bell (joined by two other members of the court) wrote a lengthy, closely reasoned dissent.[12]

To put the matter plainly, DNA collection statutes present very difficult legal issues. Not only is there substantial disagreement concerning the constitutionality of DNA collection, but even the judges who uphold DNA collection disagree concerning the constitutional justification for this practice. This is no small problem, because each different rationale for upholding DNA collection leads down a separate constitutional path in the future litigation of related Fourth Amendment and privacy issues. And, as pointed out by the dissents in *Kincade (II)* and *Raines*, each rationale for DNA collection holds the potential for government abuses and infringement of citizen privacy.

In the absence of meaningful adversarial briefing, we believe it is better to leave these important issues undecided. We therefore simply hold that, with regard to the Fourth Amendment and privacy challenges raised in this case, Nason has failed to rebut the presumption that the DNA collection statute is constitutional.

*Nason's equal protection attack on the DNA collection statute*

■ In addition to the Fourth Amendment and privacy arguments discussed in the previous section of this opinion, Nason also argues that Alaska's DNA collection statute denies him equal protection of the law because the statute requires DNA samples only from people convicted of felonies that qualify as "crimes against a person" under former AS 44.41.035(j)(1)—*i.e.*, all felonies defined in AS 11.41, with the exception of second-degree custodial interference (AS 11.41.320), and with the addition of first-degree arson (AS 11.46.400). Nason argues that it is fundamentally unfair to require DNA samples from these convicted felons while at the same time not requiring DNA samples from people convicted of equally serious felonies defined in other sections of the criminal code.

As we noted earlier, the legislature has amended the DNA collection statute since the time that Nason was charged with refusal to provide a DNA sample. In its current form, AS 44.41.035(b) requires DNA samples from all people convicted of any felony defined in the criminal code (Title 11), plus all people convicted of any misdemeanor offense defined in AS 11.41 (*see* AS 44.41.035(n)(2)), plus all people convicted of any felony defined in AS 28.35, plus all people convicted of a misdemeanor for which sex offender registration is required. Thus, the current version of the statute is not susceptible to the

---

**9.** The five-judge plurality opinion, written by Judge O'Scannlain, concluded that DNA collection was justifiable under a "totality of circumstances" approach, 379 F.3d at 832, but the decisive sixth vote was cast by Judge Gould, who believed that DNA collection was a permissible "special needs" search, *id.* at 840.

**10.** See the dissents of Judge Reinhardt, 379 F.3d at 842–871, Judge Kozinski, *id.* at 871–75, and Judge Hawkins, *id.* at 875–76.

**11.** The lead opinion written by Judge Cathell (joined by only one other member of the court) concluded that DNA collection was constitutional because, even though its "primary purpose [is] to identify individuals involved in crime", the people being sampled—"incarcerated persons"—

"have a severely diminished expectation of privacy". *See* 857 A.2d at 33. Judge Raker's concurring opinion concluded that the DNA collection statute was constitutional "on the narrow grounds that DNA sampling is an acceptable means of identifying prisoners". *See id.* at 44. And Judge Wilner's separate concurring opinion concluded that the statute was constitutional because convicted criminals, as a group, "constitute a special potential threat to public safety" in that they "tend to be recidivists", and because "many, if not most, people in prison are not there for their first offense" but rather "have committed [other] crimes, often unsolved ones, before [they committed] the crime for which they are [now] incarcerated". *See id.* at 49.

**12.** *See* 857 A.2d at 50–64.

equal protection attack that Nason presents in this appeal. Nevertheless, we must address Nason's attack on the earlier version of the statute, since this is the version that led to his prosecution and conviction.

We conclude that the earlier version of the statute did not violate the equal protection clause because the legislature had a valid reason for singling out people convicted of felonies against a person. Generally speaking, these felonies are the ones most likely to yield DNA evidence that can be used to identify the perpetrator—because, in most of the felonies defined in AS 11.41, the perpetrator will be present at the scene of the crime and will touch the victim or touch a weapon or other instrument used for assaultive purposes. Moreover, the legislature could reasonably conclude that people willing to commit these types of assaultive crimes are more likely to do so in the future.

For these reasons, assuming that DNA collection from convicted prisoners is constitutional, we conclude that the legislature did not violate the equal protection clause when, in the former version of the statute, it limited DNA collection to people convicted of felonies against a person.

*Conclusion*

The judgement of the district court is AFFIRMED.