NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ANTONIO N. JORDAN,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11048<br>Trial Court No. 4TO-09-151 CR |
| JAMES F. LETENDRE,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11271<br>Trial Court No. 3PA-11-1989 CR<br><br>O P I N I O N<br><br>No. 2483 — January 15, 2016 |

Appeals from the Superior Court, Fourth Judicial District, Tok, Robert B. Downes, Judge, and Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Margi Mock, under contract with the Public Defender Agency (for Appellant Antonio N. Jordan), Megan Webb, Assistant Public Defender (for Appellant James F. Letendre), and Quinlan Steiner, Public Defender, Anchorage (for both appellants). Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals,

Anchorage, and Michael C. Geraghty and Craig W. Richards, Attorneys General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

The defendants in these two appeals were convicted of violating AS 11.71.040(a)(3)(F) — *i.e.*, possessing marijuana "[in] an aggregate weight of four ounces or more" — after the police found marijuana on their residential properties.

Both defendants now assert that their juries should have been instructed that even if the marijuana in their possession actually weighed four ounces or more, it would be a defense to this charge if the defendant made a reasonable mistake regarding the weight of the marijuana.

(In Jordan's case, the jury received no instruction on this point. In Letendre's case, the jury was affirmatively instructed that it was irrelevant whether the defendant knew, or even reasonably should have known, that the marijuana weighed four ounces or more.)

As we explain more fully in this opinion, we agree that the juries should have been instructed that reasonable mistake as to the weight of the marijuana was a defense. Possession of less than four ounces of marijuana in one's home for personal use is protected under the right of privacy guaranteed by Article I, Section 22 of the Alaska Constitution. *Ravin v. State*, 537 P.2d 494 (Alaska 1975); *Noy v. State*, 83 P.3d 538, 542-43 (Alaska App. 2003). We accordingly conclude that when a defendant is prosecuted for possessing four ounces or more of marijuana in their home, the State must

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

prove that the defendant was at least negligent regarding the circumstance that the amount of marijuana equaled or exceeded four ounces.

But as we also explain in this opinion, we conclude that this error was harmless beyond a reasonable doubt in both of the defendants' cases. We therefore affirm both defendants' convictions for possessing four ounces or more of marijuana.

Jordan's case presents an additional issue. The jury found him guilty of two offenses: possessing four ounces or more of marijuana, and also maintaining a building (his greenhouse and cabin) to keep the marijuana. Jordan should not have received a separate conviction for this latter offense. *See Rofkar v. State*, 305 P.3d 356, 358-59 (Alaska App. 2013). We therefore direct the superior court to enter a single, merged conviction based on the jury's two verdicts.

*Underlying facts*

*State v. Jordan*: The Alaska State Troopers searched Antonio N. Jordan's property and discovered 15 marijuana plants growing in his greenhouse. They also found an extensive marijuana growing space on the upper floor of his cabin. The troopers dried the marijuana plants, then separated the buds and leaves. The dried buds and leaves weighed a little over a pound and a half (approximately 25.2 ounces).

Jordan was indicted on two counts of fourth-degree controlled substance misconduct. The first count charged Jordan with possessing four ounces or more of marijuana.[1] The second count charged Jordan with knowingly maintaining a building that was used for keeping or distributing controlled substances in furtherance of a felony

[1] AS 11.71.040(a)(3)(F).

drug offense.[2] This "maintaining a building" count was based on the fact that Jordan grew and stored the marijuana in buildings on his property.

A jury found Jordan guilty of both these offenses.

*State v. Letendre*: The police found several marijuana plants growing in James F. Letendre's residence. They also found processed marijuana (*i.e.*, marijuana that had been harvested and dried).

The marijuana plants weighed almost thirteen pounds when they were seized. According to the testimony at Letendre's trial, these plants would have yielded a little over two pounds of usable marijuana after the plants were harvested and dried.

The additional, already-processed marijuana found at Letendre's residence weighed 1.88 pounds.

Letendre was charged with three offenses: possessing one ounce or more of marijuana with intent to distribute it;[3] possessing four ounces or more of marijuana; and maintaining a building for keeping or distributing controlled substances in furtherance of a felony drug offense. (This "maintaining a building" count was based on the fact that Letendre grew and stored the marijuana in his home.)

Letendre claimed that all of this marijuana was for his personal use. The jury acquitted Letendre of possessing the marijuana for distribution, and also acquitted him of the "maintaining a building" charge, but the jury convicted Letendre of possessing four ounces or more of marijuana.

---

[2]    AS 11.71.040(a)(5).

[3]    AS 11.71.040(a)(2).

The main question presented in these appeals is whether, when the State charges someone with possessing four ounces or more of marijuana in their home for personal use, the State is required to prove that the defendant acted with a culpable mental state regarding the circumstance that the marijuana in their possession amounted to four ounces or more.

Jordan and Letendre argue that, in such cases, the State is required to prove that the defendant was at least reckless, as defined in AS 11.81.900(a)(3), regarding the circumstance that the marijuana weighed four ounces or more.

For its part, the State argues that no culpable mental state need be proved with respect to the weight of the marijuana. The State takes the position that when a defendant is charged with possessing four ounces or more of marijuana, the State must prove that the defendant "knowingly" possessed the marijuana, but the defendant is strictly liable with regard to whether the marijuana equals or exceeds four ounces.

As we will explain, we agree with the State in part. When a defendant is charged with possessing four ounces or more of marijuana in a place *other* than the defendant's home, the defendant is strictly liable with regard to the amount of marijuana in their possession. The situation is different, however, for defendants who are charged with possessing marijuana in their homes.

The privacy clause of the Alaska Constitution — Article I, Section 22 — limits the government's authority to prosecute people for possession of marijuana in their homes when the marijuana is for personal use. *Ravin v. State*, 537 P.2d 494 (Alaska 1975). In *Noy v. State*, 83 P.3d 538, 542-43 (Alaska App. 2003), this Court held that this constitutional right of privacy covers personal possession of marijuana in amounts less than four ounces.

Because of this, we hold that when a defendant is prosecuted for possessing four ounces or more of marijuana for personal use in their home, the State must prove that the defendant was at least negligent regarding the circumstance that the amount of marijuana equaled or exceeded four ounces.

We will now explain in detail how we reached this conclusion.

*The culpable mental state that the government must prove when a person is charged under AS 11.71.040(a)(3)(F) with possessing four ounces or more of marijuana in their home*

Both Jordan and Letendre were charged with fourth-degree controlled substance misconduct under AS 11.71.040(a)(3)(F). This statute declares that a person commits a class C felony if the person "possesses ... one or more preparations, compounds, mixtures, or substances of an aggregate weight of four ounces or more containing [marijuana]."

The primary issue raised in this appeal is whether, when a defendant is charged with violating this statute, and when the possession occurs in the defendant's home, the government must prove that the defendant acted with a culpable mental state regarding the fact that the marijuana in their possession equaled or exceeded four ounces.

The language of AS 11.71.040(a)(3)(F) itself does not contain any reference to culpable mental states. However, another statute, AS 11.81.610(b), contains some general rules of statutory construction pertaining to culpable mental states. One clause of this statute, AS 11.81.610(b)(1), declares that the government must normally prove that a defendant acted "knowingly" with respect to the conduct specified in a criminal statute. And another clause of the statute, AS 11.81.610(b)(2), declares that when a criminal statute applies to conduct only in particular circumstances, the government must normally prove that the defendant acted "recklessly" with respect to those circumstances.

– 6 – 2483

If we applied these rules of construction to AS 11.71.040(a)(3)(F), we would conclude that the government was required to prove that Jordan and Letendre "knowingly" possessed their marijuana, and that they acted "recklessly" with respect to the circumstance that the marijuana weighed four ounces or more.

In both Jordan's and Letendre's cases, the juries were indeed instructed that the State had to prove that Jordan and Letendre "knowingly possessed" the marijuana. But in Jordan's case, the jury was not told that the State had to prove that Jordan acted "recklessly", or acted with any other culpable mental state, regarding the fact that the usable parts of his marijuana plants had "[an] aggregate weight [of] four ounces or more". And in Letendre's case, the jury was affirmatively instructed that it was irrelevant whether Letendre might have reasonably believed that his marijuana weighed less than four ounces.

The State argues that both juries were correctly instructed. More specifically, the State argues that when a defendant is charged with possessing four ounces or more of marijuana under AS 11.71.040(a)(3)(F), the State must prove only one culpable mental state — that the defendant "knowingly" possessed the marijuana — and the State is not required to prove that the defendant acted with any culpable mental state regarding the weight of the marijuana. In other words, the State contends that defendants face strict liability with regard to the fact that the marijuana in their possession weighed four ounces or more.

The State acknowledges that "recklessly" is the culpable mental state that normally must be proved with respect to circumstances, but the State argues that this default rule of statutory construction does not apply here. More specifically, the State relies on AS 11.81.600(b)(2) — a statute which declares that the default culpable mental states specified in AS 11.81.610(b) do not apply, and that no culpable mental state must

– 7 –                                                                                      2483

be proved, "if a legislative intent to dispense with the culpable mental state requirement is present."

The State argues that Jordan's and Letendre's cases are governed by AS 11.81.600(b)(2) because the legislative history of Alaska's Controlled Substances Act (AS 11.71) demonstrates that the legislature intended to dispense with proof of any culpable mental state regarding the amount of a controlled substance in a defendant's possession.

We acknowledge that the legislative commentary to AS 11.71 states in several places that, with regard to statutes that define a drug offense in terms of a defendant's possession of a particular amount of a controlled substance, the legislature did not intend to require the State to prove that the defendant acted with any culpable mental state with regard to the specified amount. Rather, if the government proves that the defendant knowingly possessed the drug, the legislature wanted the defendant to be held strictly liable with regard to the amount of the drug. [4]

We therefore agree with the State that, under the rules of statutory construction codified in AS 11.81.600(b) and 610(b), we should construe AS 11.71.-040(a)(3)(F) as not requiring the State to prove that Jordan or Letendre acted with any culpable mental state regarding the amount of marijuana in their possession. But we also conclude that, if we construed the statute in this manner, the statute would be unconstitutional when applied to cases where a defendant is charged with possession of marijuana in their home.

---

[4] See the Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances Laws (Conference Committee Substitute for Senate Bill No. 190) (May 20, 1982) at pages 7, 14, and 21. See also the preceding year's Commentary and Sectional Analysis for the 1981 Revision of Alaska's Controlled Substances Laws, 1981 House Journal Supplement No. 60 (June 19, 1981) at pages 10-11.

Our conclusion on this issue is primarily based on the Alaska Supreme Court's decision in *State v. Rice*, 626 P.2d 104 (Alaska 1981), a decision that we will explain in some detail in this opinion.

> *(a) The normal rule of strict liability that applies when an underlying illegal act constitutes different degrees of crime, depending on the circumstances*

This Court has repeatedly held that when an offense is divided into degrees, with one statutory provision defining the basic crime and another statutory provision declaring that the offense is a higher degree of crime under certain aggravating circumstances, it is lawful to convict a defendant of the higher degree of crime without proof that the defendant possessed any culpable mental state regarding the aggravating circumstance that distinguished the higher degree of crime from the basic crime. [5]

This same principle is embodied in the Alaska Legislature's approach to the offenses defined in AS 11.71 — specifically, the legislature's announced intention to relieve the State of proving any culpable mental state with regard to the amount of the controlled substance in the defendant's possession.

The legislature's approach rests on the underlying and unstated premise that it is illegal for a person to possess *any amount* of a controlled substance (unless the person is authorized to do so under the provisions of AS 17.30). If it is a crime to possess any amount of a particular drug, and if another provision of AS 11.71 makes it a higher degree of crime to possess that drug in quantities greater than a specified amount, the legislature can properly decide that the government should be exempted

---

[5] *See Hoople v. State*, 985 P.2d 1004, 1005-06 (Alaska App. 1999); *Noblit v. State*, 808 P.2d 280, 282-86 (Alaska App. 1991); *Ortberg v. State*, 751 P.2d 1368, 1374 (Alaska App. 1988); and *Bell v. State*, 668 P.2d 829, 832-33 (Alaska App. 1983).

from proving that the defendant acted with a culpable mental state regarding the amount of the drug.

Alaska's statutory regulation of marijuana ostensibly conforms to this model. Under Alaska law, marijuana is a Schedule VIA controlled substance.[6] (In fact, marijuana is the only Schedule VIA controlled substance.) Possession of any amount of marijuana is a class B misdemeanor, unless the amount equals or exceeds one ounce.[7] If the amount of marijuana is at least one ounce but less than four ounces, the crime is a class A misdemeanor.[8] And if the amount of marijuana is four ounces or more, the crime is a class C felony.[9]

If this statutory framework were constitutional, the legislature would have the authority to eliminate the government's burden of proving a culpable mental state with regard to the amount of marijuana in a defendant's possession. But this statutory framework is not constitutional when the government charges a person with possession of marijuana in their home.

*(b) Alaska's constitutional protection of an adult's possession of marijuana in their home for personal use*

In *Ravin v. State*, 537 P.2d 494, 504, 511 (Alaska 1975), the Alaska Supreme Court held that the privacy clause of our state constitution protects an adult's right to possess marijuana in their home if the marijuana is for personal use. Some fifteen years after the *Ravin* decision, the voters of Alaska approved a ballot

---

[6] *See* AS 11.71.190(b).

[7] *See* AS 11.71.060(a)(2)(A).

[8] *See* AS 11.71.050(a)(2)(E).

[9] *See* AS 11.71.040(a)(3)(F).

measure that purported to re-criminalize all possession of marijuana. But in *Noy v. State* (*I*), 83 P.3d 538, 542-43 (Alaska App. 2003), this Court held that the new statute was unconstitutional to the extent that it infringed on the constitutional right of privacy as interpreted in *Ravin*. More specifically, we held that the legislature could not criminalize an adult's possession of less than four ounces of marijuana in their home if the possession was for personal use. *Noy I*, 83 P.3d at 543.

Immediately following our decision in *Noy I*, the State sought rehearing. *See Noy v. State* (*II*), 83 P.3d 545 (Alaska App. 2003). In its petition for rehearing, the State argued that we had misinterpreted *Ravin*.

According to the State, the *Ravin* decision did not restrict the legislature's authority to prohibit all possession of marijuana; rather, *Ravin* meant only that when defendants are arrested and charged with possessing marijuana, they can assert an affirmative defense that the marijuana was (1) possessed in their home (2) for personal use. *Noy II*, 83 P.3d at 546.

In *Noy II*, we analyzed the State's position at some length, and we compared it to the ways in which the Alaska Supreme Court had described and applied *Ravin* in its subsequent decisions. *Id.* at 546-47. At the conclusion of our analysis, we rejected the State's argument that the legislature still had the authority to enact laws that completely prohibit the possession of marijuana.

> Based on [our] analysis of the *Ravin* decision and the later supreme court decisions construing *Ravin*, we are convinced that the State's interpretation of *Ravin* is wrong. *Ravin* did not create an affirmative defense that defendants might raise, on a case-by-case basis, when they were prosecuted for possessing marijuana in their home for personal use. Instead, both in the *Ravin* opinion itself and in the supreme court's later descriptions of *Ravin*, the Alaska Supreme Court has repeatedly and consistently characterized

the *Ravin* decision as announcing a constitutional limitation on the government's authority to enact legislation prohibiting the possession of marijuana in the privacy of one's home.

*Noy II*, 83 P.3d at 547-48.

We therefore denied the State's petition for rehearing — thus re-affirming our holding in *Noy I* that the Alaska Legislature had no constitutional authority to prohibit the possession of less than four ounces of marijuana by adults in their home for personal use. *Noy II*, 83 P.3d at 548-49.

See also our later decision in *State v. Crocker*, 97 P.3d 93, 96 (Alaska App. 2004), where we held that no search warrant can issue for evidence of marijuana possession unless the State affirmatively establishes probable cause to believe that the type of marijuana possession at issue is something other than the type of possession protected by Alaska's right to privacy as construed in *Ravin* and *Noy*.

Because Jordan and Letendre were convicted of possessing marijuana on residential property for personal use, their cases involve the right of privacy recognized in *Ravin* and *Noy*.

Letendre's case is directly governed by *Ravin* and *Noy*, because the marijuana was found in his dwelling. In Jordan's case, the marijuana was found on his residential property, but in a detached greenhouse — a situation that is arguably not covered by *Ravin* and *Noy*. Because (as we explain later) we conclude that any *Ravin* / *Noy* error was harmless beyond a reasonable doubt in Jordan's case, we need not resolve this question. We will therefore assume, for purposes of this case, that *Ravin* and *Noy* apply to Jordan's possession of marijuana in a detached greenhouse on his residential property.

Under *Ravin* and *Noy*, Jordan and Letendre were not guilty of any crime under Alaska's controlled substances act unless the State proved that the marijuana in

their possession equaled or exceeded four ounces. In other words, Jordan's and Letendre's cases fall within the category of cases where a defendant's underlying conduct is lawful unless the government affirmatively proves a particular circumstance that makes it criminal.

(This is the crucial distinction between Jordan's and Letendre's cases and the decisions of this Court listed in footnote 5 of this opinion — decisions where we recognized and applied the rule that when a defendant's basic underlying conduct is itself criminal, the legislature can exempt the State from proving a culpable mental state with regard to special circumstances that make the defendant guilty of an aggravated version of the offense.)

In situations where conduct is lawful unless the government proves particular circumstances that make the conduct criminal, the government has only a circumscribed authority to impose strict criminal liability. The applicable principles of law are found in *State v. Rice*, 626 P.2d 104 (Alaska 1981).

*(c) The Alaska Supreme Court's decision in* State v. Rice: *the constitutional limits on strict liability offenses in Alaska*

*State v. Rice* involved a defendant who was convicted of violating an administrative regulation, former 5 AAC 81.140(b), which declared, "No person may possess or transport any game or parts of game illegally taken." [10] According to the State's evidence, Rice (who was a big game guide) helped his clients commit the offense of killing a moose "same day airborne" (*i.e.*, on the same day that they traveled by

---

[10] *Rice*, 626 P.2d at 107.

airplane), and then Rice used his airplane to transport the meat of the illegally taken moose. [11]

Rice was ultimately acquitted of the "same day airborne" charge. (Apparently, the State failed to prove that Rice was complicit in his clients' illegal kill.) But Rice was convicted of the illegal transportation charge. [12]

The issue before the supreme court was whether the State was required to prove that Rice acted with a culpable mental state regarding the fact that the moose was illegally taken. Rice contended that the State was required to prove that he either knew, or reasonably should have known, that the moose was illegally taken. The State, on the other hand, argued that no culpable mental state was required, and that Rice was strictly liable for transporting the moose meat. [13]

The supreme court acknowledged that the regulation at issue — "No person may possess or transport any game or parts of game illegally taken" — did not expressly require proof of any culpable mental state. [14] The question, then, was whether the regulation should be interpreted as implicitly requiring proof of a culpable mental state.

To answer that question, the supreme court had to weigh two competing doctrines: (1) the general rule that criminal liability should be imposed only when the defendant acts with "consciousness of wrongdoing" (a phrase that the supreme court later clarified as requiring proof of at least negligence [15]), versus (2) the recognized exception that punishment can be imposed without proof of a culpable mental state for regulatory

---

[11] *Id*. at 106.

[12] *Ibid*.

[13] *Id*. at 107.

[14] *Ibid*.

[15] *See State v. Hazelwood*, 946 P.2d 875, 878-79 (Alaska 1997).

offenses involving "particular industries, trades, ... or activities that affect the public health, safety, or welfare." [16]

The supreme court acknowledged that fish and game offenses were normally viewed as the sort of regulatory offenses that would permit punishment on a strict liability basis — and "[t]hus, the mere fact that the case at bar involves a fish and game regulation might perhaps be considered by some [courts] to be sufficient ... [to warrant] strict liability[.]" [17]

But the supreme court declared that it did not view fish and game offenses as being inherently strict liability offenses because, despite the regulatory nature of these offenses, the court also had to consider the danger that imposing strict liability would violate a defendant's constitutional rights. [18]

The majority in *Rice* concluded that the illegal transportation regulation would not give adequate notice of what conduct was prohibited unless the regulation was construed to require proof of at least negligence — *i.e.*, proof that defendants either knew or at least reasonably should have known that the game they were transporting had been taken illegally. [19] The majority also concluded (in the alternative) that, without proof that the defendant was at least negligent, the illegal transportation regulation bore no reasonable relationship to any valid government purpose. [20]

Justice Matthews, in a concurring opinion, wrote that both of these rationales were unconvincing. He believed that the government had an obvious interest

---

[16] *Rice*, 626 P.2d at 107.

[17] *Id*. at 108.

[18] *Id*. at 108-09.

[19] *Id*. at 109-110.

[20] *Id*. at 110.

in outlawing the transportation of illegally taken game, even when the transporter acted without a culpable mental state. [21] He further believed that the regulation clearly defined what conduct was prohibited; the fact that the regulation apparently did not require proof of a culpable mental state did not make it "vague". [22]

The real problem, Justice Matthews concluded, was that violation of the regulation carried a penalty of up to six months' imprisonment: given a penalty of this magnitude, it was fundamentally unfair to convict people who acted innocently. "In my view," Justice Matthews wrote, "due process requires that [the government prove] a culpable mental state in every case where a sentence of imprisonment may be imposed." [23]

Justice Matthews's criticism of the majority's rationale has considerable force. Moreover, his alternative approach to this issue finds support in a series of supreme court decisions — for example, *State v. Guest*, 583 P.2d 836 (Alaska 1978), [24] *Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978), [25] and *Hentzner v. State*, 613 P.2d 821

---

[21] *Id*. at 115.

[22] *Ibid*.

[23] *Ibid*.

[24] The defendant in *Guest* was charged with "statutory" rape under Alaska's former criminal code — *i.e*., having consensual sex with an underage partner. The supreme court held that the statute defining this crime would be unconstitutional unless the defendant was allowed to present the defense that he acted under a reasonable mistake — *i.e*., non-recklessly — regarding his sexual partner's age. *Guest*, 583 P.2d at 838-39.

[25] In *Kimoktoak*, the supreme court held that Alaska's hit-and-run statute would be unconstitutional unless the State was required to prove that, when the defendant failed to stop, the defendant was personally aware of circumstances that would lead him to "reasonably anticipate" that an accident resulting in injury to a person had just occurred. *Kimoktoak*, 584 P.2d at 29, 32-33.

(Alaska 1980). [26] *See also State v. Fremgen*, 889 P.2d 1083 (Alaska App. 1995). [27]

However, Justice Matthews's suggested rule of decision — a universal requirement of a culpable mental state whenever an offense carries the possibility of

[26] In *Hentzner*, the supreme court held that a defendant could not be convicted of wilfully failing to register a proposed investment contract with the Division of Banking and Securities unless the State proved that the defendant was aware that he might be engaged in wrongdoing — *i.e.*, that the defendant was at least reckless regarding the possibility that the law required the offering to be registered. It was not enough, the court ruled, for the State to prove merely that the defendant "[was] aware of what he [was] doing" or that the defendant "intentionally [did] the acts which are prohibited by law". *Hentzner*, 613 P.2d at 825.

[27] The defendant in *Fremgen* was also accused of "statutory" rape, but under Alaska's current criminal code. At the time of Fremgen's offense, the pertinent statute, AS 11.41.445(b), allowed defendants to raise the affirmative defense that they acted under a reasonable mistake as to their sexual partner's age — but only if the victim was at least 13 years of age. Relying on the supreme court's decisions and reasoning in *Guest* and *Kimoktoak*, this Court held that it was unconstitutional for the legislature to place this restriction on the defense of reasonable mistake of age — because, if this restriction was enforced, some defendants might be convicted of sexual abuse of a minor even though they honestly and reasonably believed that they were engaging in lawful sexual relations. *Fremgen*, 889 P.2d at 1084-85.

The State petitioned the supreme court to review our decision, and the supreme court initially granted the State's petition and ordered briefing. But the court ultimately affirmed this Court's decision: *see State v. Fremgen*, 914 P.2d 1244 (Alaska 1996).

(The supreme court's final order declares that the court decided to dismiss the State's petition as improvidently granted. *Id.*, 914 P.2d at 1245. Thus, technically, one might say that the supreme court did not "affirm" this Court's decision, but merely allowed it to stand. However, after declaring that the State's petition was dismissed, the supreme court's order goes on to explain (at some length) why this Court reached the correct decision under *Guest* and *Kimoktoak*, and why the State had failed to provide any convincing reason to overrule those precedents. *Id.* at 1245-46.)

imprisonment — was not adopted by the supreme court as a whole. Thus, we interpret the supreme court's decision in *Rice* as standing for two more limited principles:

First, the fact that an offense deals with a subject matter that is normally considered "regulatory" does not automatically exempt the government from having to prove a culpable mental state. Second, the question of whether a particular statute or regulation requires proof of a culpable mental state must be determined on a case-by-case basis, by considering (1) the severity of the penalty and (2) the fairness or unfairness of imposing that penalty on people who violate the law unwittingly.

This view of *Rice* is confirmed by the supreme court's later discussion of this topic in *State v. Hazelwood*, 946 P.2d 875 (Alaska 1997). Here, the court summarized the various factors that must be considered when conducting this case-specific analysis:

> [I]t is firmly established in our jurisprudence that a mental state of simple or ordinary negligence can support a criminal conviction. ... [H]owever, ... [sometimes] more will be required, and sometimes less. [In] *Speidel* [*v. State*], 460 P.2d [77,] 80 [(Alaska 1969)], [we] found a denial of due process where the defendant had been convicted of "simple neglectful or negligent failure to return a rented automobile." In that case, we insisted on at least a finding of reckless culpability in order for criminal sanctions to be imposed.

> On the other hand, elsewhere we have allowed the *mens rea* element to be dispensed with entirely. We have allowed strict liability to be read into "public welfare offenses." *See, e.g., Rice*, 626 P.2d at 107. These public welfare offenses are proscriptions which "heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare." *Morissette v. United States*, 342 U.S. 246, 254, 72 S.Ct. 240, 245, 96 L.Ed. 288 (1952). *See also Haxforth v. Idaho*, ... 786

– 18 –                                                                    2483

P.2d 580, 582 ([Idaho] App. 1990) (four-part test). As a corollary, a *mens rea* requirement is imputed only when a serious penalty attaches. *See Guest*, 583 P.2d at 838; *Kimoktoak*, 584 P.2d at 29; and *Speidel*, 460 P.2d at 80; *see also People v. Olson*, ... 448 N.W.2d 845, 847 ([Mich. App.] 1989). Also, no mental element will be required when a statute provides "clear legislative intent to the contrary." *Rice*, 626 P.2d at 108; *see also Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242-43, 2 L.Ed.2d 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."); *cf. Gregory v. State*, 717 P.2d 428, 430 (Alaska App. 1986).

*Hazelwood*, 946 P.2d at 879-880.

See also *Cole v. State*, 828 P.2d 175, 178-79 (Alaska App. 1992), where this Court conducted its own review of the various factors involved in this culpable mental state analysis.

In the years since *Rice* and *Hazelwood*, this Court has twice confronted the question of allowing strict liability versus requiring proof of a culpable mental state in cases involving the regulation of drugs and alcohol.

In *Myers v. Anchorage*, 132 P.3d 1176 (Alaska App. 2006), this Court addressed the constitutionality of the Municipality of Anchorage's drug paraphernalia ordinance. This ordinance, as written, allowed a defendant to be convicted — and sentenced to jail — for selling or possessing a wide range of supplies and implements that might reasonably be used for preparing or ingesting illegal drugs, without proof that the defendant was aware that the items would actually be used for unlawful purposes. We held that this provision violated the Alaska Constitution's guarantee of due process. 132 P.3d at 1185.

More recently, in *Solomon v. State*, 227 P.3d 461, 467-68 (Alaska App. 2010), we held that there should be a defense of unwitting intoxication in prosecutions for driving under the influence. Specifically, we held that it is a defense if a person unwittingly becomes intoxicated because of a reasonable, non-negligent mistake about the intoxicating nature of the beverage or substance they ingested.

It is unclear how much weight we should give the *Myers* and *Solomon* decisions when deciding the present appeal. The flexibility (some might say nebulousness) of the *Rice* / *Hazelwood* analysis is both its strength and its weakness. On the one hand, this multi-factor analysis allows an appellate court to consider each statute and regulation in light of its own particular statutory history, its specific underlying purposes, and the potential social consequences of allowing the government to punish people for that particular offense without proof of a culpable mental state. On the other hand, a multi-factor analysis means that almost every prior court decision dealing with related statutes is potentially distinguishable.

## *(d) Application of the Rice / Hazelwood test to the present cases*

The present cases involve the intersection of two competing policies: the legislature's acknowledged authority to enact wide-ranging regulation of controlled substances, versus the constitutional guarantee of privacy as interpreted by our supreme court in *Ravin* and by this Court in *Noy*.

The statute at issue here, AS 11.71.040(a)(3)(F), is part of our legislature's regulation of controlled substances. This is an area of law where courts often uphold strict liability; this suggests that it might be permissible for the legislature to impose strict liability on defendants who mistakenly think that they have less than four ounces of marijuana in their home, even when their mistake is an honest and reasonable one.

But as we noted earlier, AS 11.71.040(a)(3)(F) differs from the normal drug law because of the supreme court's ruling in *Ravin*. Typically, it is unlawful for a person to possess *any* amount of any controlled substance without proper authorization. But in Alaska, our constitutional right of privacy protects an adult's right to possess less than four ounces of marijuana in their home for personal use. If the government were allowed to impose felony penalties — here, imprisonment for up to 5 years — on people who honestly and reasonably, but mistakenly, believe that they possess a permissible amount of marijuana in their home, this would significantly undercut the constitutional protection announced in *Ravin*.

When we weigh these competing considerations using the *Rice / Hazelwood* analysis, we conclude that when a defendant is charged with violating AS 11.71.-040(a)(3)(F) for possessing four ounces or more of marijuana in their home, the due process clause of the Alaska Constitution requires the State to prove that the defendant acted at least negligently regarding the circumstance that the marijuana weighed four ounces or more. In other words, the due process clause forbids the State from convicting the defendant if the defendant reasonably (*i.e.*, non-negligently) believed that they possessed less than four ounces.

This constitutional requirement overrides the legislature's intention to subject these defendants to strict liability.

### (e) Application of this rule to Jordan's and Letendre's cases

As we noted earlier in this opinion, Jordan's jury was not instructed that the State had to prove that Jordan acted with negligence (or any other culpable mental state) regarding the weight of the marijuana in his greenhouse. And Letendre's jury was affirmatively instructed that even if Letendre was reasonably mistaken about the amount

– 21 –                                                                2483

of marijuana he possessed, this was irrelevant. The remaining question is whether these errors require reversal of the two defendants' convictions.

Because the errors in these cases exempted the State from having to establish an element of the offense, we must reverse Jordan's and Letendre's convictions unless we are convinced that the errors were harmless beyond a reasonable doubt. [28]

A properly instructed jury would have been asked to decide whether the State had proved, beyond a reasonable doubt, that Jordan and Letendre acted at least negligently with respect to the circumstance that the amount of marijuana in their possession equaled or exceeded four ounces. That is, the State had to convince the jury that Jordan and Letendre either knew or reasonably should have known that their marijuana weighed at least four ounces.

*Jordan's case*: According to the evidence presented at Jordan's trial, the marijuana seized from Jordan's property yielded more than 25 ounces of leaves and buds after it was dried. Jordan wanted to take the stand and testify (according to his attorney's offer of proof) that "to the best of [Jordan's] knowledge, [he] ... would not [have expected] the amount of marijuana that he had been growing to come out to more than four ounces ... after it was processed[.]" The defense attorney told the trial judge that, based on Jordan's knowledge of the amount of marijuana he was growing, and Jordan's research into the statutory method for weighing marijuana, Jordan had a reasonable expectation that his amount of marijuana was under the legal limit.

In other words, Jordan wished to testify that he honestly and reasonably believed that the marijuana in his possession was under the four-ounce limit.

---

[28]   *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

After hearing the defense attorney's offer of proof, the trial judge announced that he would not let Jordan give this testimony. The judge characterized Jordan's proposed testimony as "almost ludicrous" and "incredible".

Although the trial judge may have had reasons for being skeptical of Jordan's proposed testimony, a judge's skepticism regarding the truthfulness or credibility of a witness's proposed testimony is not a valid reason for the judge to exclude that testimony from the trial. Regardless of how the judge views these matters, it is the jury's role to assess and resolve questions of truthfulness and credibility.

But even though the trial judge committed error by excluding Jordan's proposed testimony, the question of harmless error turns on whether there is a reasonable possibility that a properly instructed jury, having heard Jordan's proposed testimony, would have found in Jordan's favor on the issue of whether Jordan's assessment of the weight of the marijuana was reasonable.

Given the great discrepancy between the statutory limit (four ounces) and the amount of usable marijuana harvested from Jordan's plants (slightly more than a pound and a half), we conclude that no reasonable jury could have had a reasonable doubt on this question. The evidence was overwhelming that, even if Jordan may have subjectively believed that the amount of marijuana in his possession was less than four ounces, Jordan's assessment was unreasonable.

We therefore conclude that the two errors in Jordan's case — the judge's failure to tell the jury that the State was required to prove that Jordan was at least negligent regarding the fact that his marijuana equaled or exceeded four ounces, and the judge's refusal to let Jordan testify on this subject — were harmless beyond a reasonable doubt. Accordingly, we affirm Jordan's conviction for fourth-degree controlled substance misconduct.

*Letendre's case*: The marijuana plants found in Letendre's home weighed almost thirteen pounds when they were seized — the equivalent of a little over two pounds of usable marijuana once the marijuana was harvested and dried. In addition, Letendre had other processed marijuana that weighed 1.88 pounds.

As we noted above, the question of harmless error turns on whether there is a reasonable possibility that a properly instructed jury would have had a reasonable doubt as to whether Letendre reasonably believed that all of this marijuana weighed less than four ounces. [29] Given the great discrepancy between the statutory limit of four ounces and the amount of marijuana found in Letendre's possession, we conclude that no reasonable jury could have had a reasonable doubt on this question. The evidence was overwhelming that, even if Letendre subjectively believed that the amount of marijuana in his possession was less than four ounces, Letendre's assessment was unreasonable.

Thus, even though the trial judge erroneously instructed the jury that it was irrelevant whether Letendre might have reasonably believed that he possessed less than four ounces of marijuana, we conclude that this error was harmless beyond a reasonable doubt. Accordingly, we affirm Letendre's conviction for fourth-degree controlled substance misconduct.

---

[29] *Anderson v. State*, 337 P.3d 534, 540 (Alaska App. 2014).

*Jordan should not have received a separate conviction for maintaining a building used for keeping or distributing controlled substances in violation of a felony drug offense*

As we explained at the beginning of this opinion, Jordan was convicted of a second crime — the offense of maintaining a building used for keeping or distributing controlled substances in violation of a felony drug offense. AS 11.71.040(a)(5). This second conviction was based on the theory that Jordan grew and stored the marijuana in buildings on his property.

Because this was the State's theory of prosecution, it was improper for the superior court to enter a separate conviction and sentence for the "maintaining a building" charge. Under our decision in *Rofkar v. State*, 305 P.3d 356, 358-59 (Alaska App. 2013), the superior court was required to enter a single, combined conviction for the two counts.

Accordingly, we direct the superior court to issue an amended judgement reflecting one merged conviction and one sentence.

*Conclusion*

Jordan's and Letendre's convictions for fourth-degree controlled substance misconduct under AS 11.71.040(a)(3)(F) — *i.e.*, the convictions based on the theory that they possessed four or more ounces of marijuana — are AFFIRMED.

However, in Jordan's case, we direct the superior court to merge his conviction for this offense with his separate conviction for fourth-degree controlled substance misconduct under AS 11.71.040(a)(5) — *i.e.*, the conviction based on the "maintaining a building" theory.