*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANTONIO JORDAN, | ) | |
| | ) | Supreme Court No. S-16217 |
| Petitioner, | ) | Court of Appeals No. A-11048 |
| | ) | |
| v. | ) | Superior Court No. 4TO-09-00151 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7240 – May 4, 2018 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Tok, Robert B. Downes, Judge.

Appearances: Susan Orlansky, Reeves Amodio LLC, and Marjorie Mock, Anchorage, for Petitioner. Ann B. Black, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Respondent.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.
BOLGER, Justice, with whom STOWERS, Chief Justice, joins, dissenting.

## I.    INTRODUCTION

The police entered the defendant's property and found 15 marijuana plants, which when stripped and dried yielded over a pound and a half of marijuana. At trial the

court excluded the defendant's testimony that he believed he possessed less than four ounces of marijuana — the statutory limit — and failed to instruct the jury that it had to find a culpable mental state with regard to the marijuana's weight. The jury convicted the defendant of possessing at least four ounces, a class C felony. On appeal, the court of appeals held that the trial court erred both by barring the defendant's testimony about his subjective belief and by omitting a mental state element from the jury instructions. But finding these errors harmless, the court affirmed the defendant's conviction.

On his petition for hearing to this court, the defendant argues for the first time that the alleged errors at trial are structural errors; that is, that the constitutional rights they affect are so important that they cannot be subject to harmless error review. We agree conditionally and in part. We hold that omitting from jury instructions a contested element of an offense — here the defendant's mental state regarding the marijuana's weight — is structural error. We further hold that the restriction on the defendant's testimony in this case — which we agree was error — was not harmless beyond a reasonable doubt, though we do not reach the question whether it was structural error.

Our decision of these issues, however, assumes that the defendant's possession of marijuana in a greenhouse on his residential property should be afforded the same constitutional protections given to his possession of marijuana in the home. Whether this is a legitimate assumption was not decided in either the superior court or the court of appeals. We therefore reverse the court of appeals' decision and remand to the superior court to consider in the first instance whether the constitutional protections apply.

## II. FACTS AND PROCEEDINGS

In 2008 the police found 15 marijuana plants on Antonio Jordan's property in Tok. Possessing four or more ounces of marijuana is a class C felony.[1] The police lacked the immediate means to weigh the marijuana by the statutorily approved method for live plants (the "one-sixth" method),[2] so they stripped off the leaves and dried and weighed them; this method yielded over 25 ounces.

Jordan was indicted on a charge of violating AS 11.71.040(a)(3)(F).[3] He moved to dismiss the indictment on the ground that the method used to weigh the marijuana was not legally sanctioned. The superior court denied the motion, reasoning that the "one sixth" method described in AS 11.71.080 is not exclusive and that the police had used a reasonable alternative.

### A. The Exclusion Of Jordan's Testimony

Near the beginning of trial the court granted the State's request for a protective order precluding the defense from raising the statutory weighing method "for

---

[1] AS 11.71.040(a)(3)(F) (2008). This statute was repealed after Jordan was indicted and convicted. Ch. 36, § 179, SLA 2016 (effective July 12, 2016). In this opinion we refer to the law in effect when Jordan was indicted and convicted.

[2] *See* AS 11.71.080 ("For purposes of calculating the aggregate weight of a live marijuana plant, the aggregate weight shall be one-sixth of the measured weight of the marijuana plant after the roots of the marijuana plant have been removed."). Because the State Troopers in Tok did not have a certified scale on site, they needed to send the plants away for analysis. But they could not send live plants because freshly cut, green marijuana quickly develops a highly toxic mold.

[3] Jordan was also indicted and convicted under AS 11.71.040(a)(5) for "knowingly keep[ing] or maintain[ing] any . . . dwelling, building, . . . or other structure or place that is used for keeping or distributing controlled substances in violation of a felony offense under this chapter or AS 17.30." That offense is not directly at issue in this appeal.

purposes of cross examination and otherwise during the presentation of the evidence."
Later, after the State rested its case, Jordan's attorney asked the court "to reconsider its ruling on the protective order because it's going to in large part affect Mr. Jordan's decision whether or not to testify." According to the attorney, Jordan would testify that "he would not expect the amount of marijuana that he had been growing to come out to more than four ounces . . . after it was processed by the troopers," and that Jordan's belief was "informed by his knowledge and research of the statutory method for weighing marijuana . . . prescribed in AS 11.71.080." The attorney said that "if the court would not allow Mr. Jordan to testify as to that, then we would not be calling him." Under these circumstances, the attorney argued, the protective order excluding any mention of the "one sixth" statutory weighing method interfered with Jordan's constitutional rights to testify and to present "a full and fair defense."

The superior court decided, however, that it was "not going to allow the testimony." The court said Jordan's proposed testimony that his marijuana weighed less than four ounces seemed "almost ludicrous to me"; given the number of marijuana plants involved in the case, the court considered the proposed testimony "incredible. It just doesn't make sense." The court added that it was not going to allow Jordan to "get into the law, get into . . . the correct way that the law reads and then make that the issue." The court then inquired of Jordan whether he was voluntarily giving up his right to testify, as required by Alaska Criminal Rule 27.1;[4] Jordan answered, "Well, . . . given your ruling, . . . I do not wish to testify."

---

[4]     Alaska R. Crim. P. 27.1(b) ("If [when the defense rests] the defendant has not testified, the court shall ask the defendant to confirm that the decision not to testify is voluntary. This inquiry must be directed to the defendant personally and must be made on the record outside the presence of the jury."); *see LaVigne v. State*, 812 P.2d 217, 222 (Alaska 1991) (establishing trial court's responsibility to inquire whether waiver of right to testify is voluntary, later adopted as Rule 27.1(b)).

**B.     The Jury Instruction**

The superior court instructed the jury that the State had to prove Jordan "knowingly possessed a schedule VIA controlled substance; . . . that the substance "was marijuana; and . . . that the aggregate weight was four ounces or more." In this formulation the adverb "knowingly" modifies only the first element of the crime, possession of "a schedule VIA controlled substance"; the instructions thus did not require the State to prove that Jordan's possession of "four ounces or more" of the substance was also knowing. The instructions included no mental state requirement at all as to the amount.

**C.     The Court Of Appeals Decision**

Jordan was convicted of two counts of fourth-degree misconduct involving a controlled substance. On appeal, he argued both that he should have been allowed to testify about his subjective belief regarding the marijuana's weight and that the jury lacked complete instructions on the mental state necessary to support a guilty verdict. The court of appeals agreed with Jordan on both arguments.[5] Citing the Alaska Constitution's privacy clause[6] and *Ravin v. State*[7] — which protect citizens' private possession of small amounts of marijuana in the home — the court of appeals held that due process required proof of a mental state as to amount: that Jordan did not "reasonably (i.e., non-negligently) believe[] that [he] possessed less than four ounces."[8] The court of appeals also held that Jordan's proposed testimony regarding his subjective belief should have been admitted despite the judge's skepticism about it because "it is

---

[5]     *Jordan v. State*, 367 P.3d 41, 44-45, 53 (Alaska App. 2016).

[6]     Alaska Const. art. I, § 22.

[7]     537 P.2d 494, 504, 511 (Alaska 1975).

[8]     *Jordan*, 367 P.3d at 47-48, 52.

the jury's role to assess and resolve questions of truthfulness and credibility."[9] The court concluded, however, that both these errors were harmless beyond a reasonable doubt because "[t]he evidence was overwhelming that, even if Jordan may have subjectively believed that the amount of marijuana in his possession was less than four ounces, Jordan's assessment was unreasonable."[10]

## D. The Petition For Hearing

Jordan petitioned for hearing, arguing that the superior court's errors were structural and therefore not amenable to harmless error review. We granted review on two questions:

> 1)  Was it structural error to deny Jordan's request to testify that he believed the marijuana in his greenhouse was under the four-ounce limit? Should we overrule our reliance on the harmless error analysis we applied in *LaVigne v. State*, 812 P.2d 217, 220 (Alaska 1991)?
>
> 2)  Was it structural error to fail to instruct the jury that the State must prove that Jordan acted at least negligently regarding the circumstance that the marijuana weighed four ounces or more?[11]

We assume, as the court of appeals did, that Jordan's possession of marijuana under the circumstances of this case implicated his privacy rights under the Alaska Constitution.[12] With that assumption, we do not reach the first question because we conclude that

---

[9]  *Id.* at 53.

[10]  *Id.*

[11]  *Jordan v. State*, No. S-16217 (Alaska Supreme Court Order, Apr. 27, 2016).

[12]  *See Jordan*, 367 P.3d at 48 (assuming "for purposes of this case" that constitutional privacy protection for personal use of marijuana in the home applies "to Jordan's possession of marijuana in a detached greenhouse on his residential property").

excluding Jordan's testimony about his mental state regarding the marijuana's weight was not harmless beyond a reasonable doubt. Answering the second question, we hold that the failure to instruct the jury on a contested element of an offense is structural error.

## III.  STANDARDS OF REVIEW

"Whether a claim has been preserved for appeal"[13] and whether due process requires a criminal offense to include a mental state are questions of law we review de novo, adopting "the rule of law that is the most persuasive in the light of precedent, reason, and policy."[14]  "Determining the appropriate standard of review is [also] a question of law that we review de novo."[15]

## IV.  DISCUSSION

The United States Supreme Court held in *Chapman v. California* that even a constitutional error will not necessitate a new trial if it was "harmless beyond a reasonable doubt."[16]  We have applied *Chapman*'s harmless error test to certain cases involving constitutional violations,[17] but in other cases we have declined to apply

---

[13]     *Wagner v. State*, 347 P.3d 109, 111 n.7 (Alaska 2015).

[14]     *Khan v. State*, 278 P.3d 893, 896 (Alaska 2012) (quoting *Turney v. State*, 936 P.2d 533, 538 (Alaska 2012)); *see, e.g.*, *State v. Hazelwood*, 946 P.2d 875, 878 & n.3 (Alaska 1997) (applying de novo review to the question whether due process requires that a criminal offense include a mental state).

[15]     *Hutton v. State*, 350 P.3d 793, 795 (Alaska 2015).

[16]     386 U.S. 18, 24 (1967).

[17]     *E.g.*, *Kalmakoff v. State*, 257 P.3d 108, 130 & n.113 (Alaska 2011) (analyzing whether violation of defendant's right against self-incrimination was harmless beyond a reasonable doubt); *LaVigne v. State*, 812 P.2d 217, 220, 222 (Alaska 1991) ("We hold today that [the *Chapman*] standard of 'harmless error beyond a reasonable doubt' [restated in *Love v. State*, 457 P.2d 622 (Alaska 1969)] applies to LaVigne's
(continued...)

harmless error review and, upon finding error, have simply reversed.[18] This case requires us to decide whether two errors fall into the first category or the second: (1) the failure to instruct the jury on a contested element of a crime and (2) the refusal to allow the defendant to testify about that contested element.

The United States Supreme Court refers to the category of errors not amenable to harmless error review as "structural defects" that " 'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.' "[19] Structural errors require automatic reversal and a new trial.[20] In determining whether an error is structural, the Supreme Court "rest[s] [its] conclusion . . . upon the difficulty of assessing

---

[17] (...continued)
claim of constitutional error [for denial of his right to testify].").

[18] *E.g.*, *Wassillie v. State*, 441 P.3d 595 (Alaska 2018) (reversing without harmless error review for violation of defendant's right to valid grand jury indictment); *Hutton v. State*, 350 P.3d 793 (Alaska 2015) (reversing without harmless error review when defendant was misadvised of the elements of the charges against him before waiving right to jury trial); *Gregory v. State*, 550 P.2d 374, 381 (Alaska 1976) (reversing without harmless error review when defendant was not informed of benefits of counsel before waiving right to counsel and pleading guilty).

[19] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).

[20] 5 AM. JUR. 2D *Appellate Review* § 672 (2017) ("Constitutional 'trial error,' which occurs during the presentation of the case to the jury, does not automatically require reversal, and is subject to the harmless error analysis; only in rare cases is an error deemed 'structural error' that requires automatic reversal." (citing cases)).

the effect of the error" and considers other factors, including fundamental fairness and whether harmlessness is irrelevant under the circumstances.[21]

A.      **If Jordan's Constitutional Privacy Rights Are Implicated By His Marijuana Possession, It Was Error To Give A Jury Instruction That Omitted A Mental State Element.**

The State argues that the possession offense with which Jordan was charged imposed strict liability with regard to the amount: that is, that the defendant need only know that he possessed marijuana, not that it weighed four ounces or more. The State argues that the trial court therefore could not have erred when it prevented Jordan from testifying about his subjective intent or when it failed to instruct the jury on a mental state specific to the amount. Although this question is not clearly before us,[22] we briefly address the State's argument because the existence of an error is a prerequisite to deciding if the error was structural.

The court of appeals agreed with the State that the legislature did not intend to tie a mental state requirement to the weight element of the possession offense.[23] But the court appropriately went on to consider whether this created due process concerns. The court examined our holdings in *State v. Rice* and *State v. Hazelwood* to articulate an analytical framework: "First, the fact that an offense deals with a subject matter that is

---

[21]      *Gonzalez-Lopez*, 548 U.S. at 149 & n.4.

[22]      Jordan points out that the State did not cross-petition on the court of appeals' finding of error in Jordan's case and did not petition for hearing in *Letendre v. State* (A-11271), which was consolidated with Jordan's case in the court of appeals for consideration of the mens rea question. *Jordan v. State*, 367 P.3d 41, 45 (Alaska App. 2016).

[23]      *Id.* at 46-48. As the court of appeals correctly noted, the statute is silent about any culpable mental state, either for possession itself or for the amount possessed. Former AS 11.71.040(a)(3)(F) (2008).

normally considered 'regulatory' does not automatically exempt the government from having to prove a culpable mental state"; and second, whether due process requires proof of a mental state depends on a "case-by-case" examination of the offense, "considering (1) the severity of the penalty and (2) the fairness or unfairness of imposing that penalty on people who violate the law unwittingly."[24] Applying this framework, the court of appeals concluded that — because Alaska's "constitutional right of privacy protects an adult's right to possess . . . marijuana in their home for personal use"[25] — due process "requires the State to prove that the defendant acted at least negligently regarding the circumstance that the marijuana weighed four ounces or more."[26]

We agree with the court of appeals' analysis and conclusion. In *Hazelwood* we discussed liability for "objective fault crimes," that is, offenses "based either on strict liability or negligence" that "do not require any subjective awareness of wrongdoing on the defendant's part."[27] We concluded that criminal responsibility rests ultimately on the reasonableness of society's "expectation of individual conformity," which means that society's interest in conformity to its regulations "can never outweigh the individual's interest in freedom from substantial punishment for a violation he or she could not reasonably have been expected to avoid."[28]

---

[24] *Jordan*, 367 P.3d at 49-52 (discussing *State v. Rice*, 626 P.2d 104, 106-10 (Alaska 1981) and *State v. Hazelwood*, 946 P.2d 875, 878-80 (Alaska 1997)).

[25] *Id.* at 52; *see also Ravin v. State*, 537 P.2d 494, 504, 511 (Alaska 1975) (holding that "possession of marijuana by adults at home for personal use is constitutionally protected").

[26] *Jordan*, 367 P.3d at 52.

[27] *Hazelwood*, 946 P.2d at 882 & n.14.

[28] *Id.* at 883.

This "principle of reasonable deterrence" generally allows the government to impose strict liability "when the failure to abide by a rule is inherently unreasonable."[29] Such situations include, for example: (1) when "a person's conduct is hedged in by regulation, such that one may reasonably assume his or her routine decisions are guided by rules";[30] (2) when conduct is "*malum in se*," that is, so obviously wrong that all reasonable members of society recognize it as such;[31] and (3) when violations "call for only a modest fine."[32] The possession of marijuana in the home in an amount which may or may not be in excess of a statutory limit — and which if less than the limit is concededly not a violation of state law — fits none of these categories. Society cannot reasonably expect the law to deter people from possessing an amount of marijuana in the home that a reasonable person would believe was legal.[33] We therefore agree with the court of appeals' conclusion that because Alaska's right of privacy protects some personal possession of marijuana, the State may not "impose felony penalties . . . on people who honestly and reasonably, but mistakenly, believe that they possess a permissible amount of marijuana in their home" without "significantly

---

[29]     *Id.*

[30]     *Id.* (discussing persons in "rule-laden environments, . . . whose actions have a substantial impact on public health, safety, or welfare" (citing *Cole v. State*, 828 P.2d 175, 178 (Alaska App. 1992))).

[31]     *Id.*

[32]     *Id.* at 883-84.

[33]     *Id.* at 883 (holding that mental state of ordinary negligence "[was] constitutionally permissible because it approximates what the due process guarantee aims at: an assurance that criminal penalties will be imposed only when the conduct at issue is something society can reasonably expect to deter").

undercut[ting]" this constitutional protection.[34] Assuming that this protection extended to Jordan's possession of marijuana in his detached greenhouse, we agree that the State was required to prove a mental state as to the weight of marijuana in Jordan's possession.

The State argues that *Hazelwood* should not apply because the law at issue is a "public welfare statute" and because the legislature intended that there be no mental state requirement. We disagree. First, marijuana possession is not what is usually understood as a "public welfare" offense, "where the penalties are relatively small and conviction does no great danger to an offender's reputation."[35] Under the law as it then existed, Jordan was convicted of a felony and faced a possible five-year prison sentence, though he was ultimately sentenced to two years.[36]

Second, the legislature cannot exempt a statute from due process analysis simply by demonstrating a clear intent to do away with a mens rea requirement. In *Hazelwood*, noting concern that "even crimes which had traditionally required proof of criminal intent have been recharacterized as strict liability crimes," we rejected an

---

[34]    *Jordan v. State*, 367 P.3d 41, 52 (Alaska App. 2016).

[35]    *Speidel v. State*, 460 P.2d 77, 80 (Alaska 1969); *see also Morissette v. United States*, 342 U.S. 246, 256 (1952), *discussed with approval in Hazelwood*, 946 P.2d at 880. Early examples of "public welfare" offenses in American jurisdictions include "selling adulterated milk" or "a tavernkeeper . . . selling liquor to an habitual drunkard." *Morissette*, 342 U.S. at 256.

[36]    *See Speidel*, 460 P.2d at 80 (holding that felony conviction and potential "five-year prison term for simple neglectful or negligent failure to return a rented automobile at the time specified in the rental agreement" meant that crime was not "public welfare" offense).

-12-                                                                      **7240**

exception based on clear legislative intent.[37]  And "[s]trict liability cannot be applied simply to expedite punishment when there is no reasonable expectation of deterrence."[38]

The State alternatively asserts that the conduct at issue here falls into other groupings of possible strict liability offenses:  either that Jordan's marijuana possession was *malum in se* ("when the failure to abide by a rule is inherently unreasonable" such as where " 'awareness of the commission of the act necessarily carries with it an awareness of wrongdoing' ") or that it was so "hedged in by regulation . . . that one may readily assume his or her routine decisions are guided by rules."[39]  But we do not agree that marijuana possession necessarily falls into either category.  Possession of marijuana in the home for personal use is constitutionally protected and cannot be *malum in se*. And personal marijuana possession does not occur in a "rule-laden environment[]" such as a heavily regulated industry, in which persons "can reasonably be assumed aware of their governing codes."[40]

Finally, citing *Morgan v. Municipality of Anchorage*,[41] the State argues that the court of appeals' decision in this case is inconsistent with its decisions in the analogous context of drunk driving.  Case law holds that drunk driving offenses involve

---

[37]     *Hazelwood*, 946 P.2d at 882 ("An exception to the mens rea requirement for 'clear legislative intent to the contrary' has the potential to swallow the rule.  As we said in *Speidel*, even where a statute is explicit, due process will on occasion require a higher degree of culpability." (first citing *McCutcheon v. People*, 69 Ill. 601, 601 (1873); then citing *State v. Baltimore & Susquehanna Steam Co.*, 13 Md. 181, 186 (1859); and then citing *Speidel*, 460 P.2d at 80)).

[38]     *Id.* at 884.

[39]     *Id.* at 883 (quoting *Hentzner v. State*, 613 P.2d 821, 826 (Alaska 1980)).

[40]     *Id.*

[41]     643 P.2d 691, 692 (Alaska App. 1982).

strict liability with regard to the amount of alcohol in a defendant's blood;[42] the State need only prove that a defendant knowingly consumed alcohol and drove, not that the defendant knew he had consumed more than the allowable limit.[43]

The court of appeals addressed the drunk driving standard in several recent cases.[44] In *McCarthy v. State* it explained why the mental state requirements for drunk driving offenses are consistent with *Hazelwood*: "[P]roof that the defendant knowingly drank alcoholic beverages, coupled with proof that the defendant became impaired, or that the defendant drank to the point where their blood alcohol level exceeded the legal limit, is itself sufficient to meet the minimal due process requirement for imposing criminal liability."[45] As the court of appeals recognized in this case, the *Rice/Hazelwood* test is flexible and case-specific and supports a different result here.[46] The unique circumstances of the privacy protection for marijuana possession in the home, the increased safety concerns with drunk driving on public streets,[47] and the fact that blood alcohol thresholds are arguably meant to deter driving at any level of intoxication are sufficient to distinguish drunk driving from the possession of marijuana.

---

[42] *McCarthy v. State*, 285 P.3d 285, 290 (Alaska App. 2012) (citing cases).

[43] *Id.*

[44] *See Jordan v. State*, 367 P.3d 41, 51-52 (Alaska App. 2016) (citing *Solomon v. State*, 227 P.3d 461, 467-68 (Alaska App. 2010)).

[45] *McCarthy*, 285 P.3d at 292 (citing *Valentine v. State*, 155 P.3d 331 (Alaska App. 2007), *reversed on other grounds by Valentine v. State*, 215 P.3d 319 (Alaska 2009)).

[46] *Jordan*, 367 P.3d at 52.

[47] *Ravin* noted serious public safety concerns related to marijuana use while driving and limited its holding to possession of marijuana in the home. *Ravin v. State*, 537 P.2d 494, 511 (Alaska 1975).

In sum, we agree with the court of appeals that when the defendant's possession of marijuana implicates the constitutional privacy rights recognized in *Ravin*,[48] the failure to instruct the jury on a mental state related to the marijuana's amount is error.

## B. Jordan Preserved His Right To Appeal The Jury Instructions.

Our standard of review depends on whether Jordan properly preserved his objection in the trial court.[49] Absent timely objection, we generally review claims of error for plain error, requiring an appellant to establish the following: (1) that there was an error that was not "the result of an intelligent waiver or a tactical decision not to object"; (2) that the error was obvious; (3) that the error "affect[ed] substantial rights, meaning that it must pertain to the fundamental fairness of the proceeding"; and (4) that the error was prejudicial.[50] Here, Jordan did not explicitly request an instruction requiring the jury to find a culpable mental state applicable to the marijuana's weight. And in the court of appeals he advocated "plain error" review, asserting that the court should address his argument despite his failure to object to the instructions given.

We conclude, however, that Jordan's objection was preserved and that we therefore need not decide whether any error amounted to plain error. Jordan's trial attorney argued repeatedly and at length about the legality of the weighing method used by the police; he argued that it was a "jury issue" and a "due process issue" relevant to whether Jordan should have known he was acting illegally. Opposing the State's request

---

[48] *Id.* at 504, 511.

[49] *Khan v. State*, 278 P.3d 893, 896 (Alaska 2012) ("Trial errors to which the parties did not object are reviewed for plain error.").

[50] *Goldsbury v. State*, 342 P.3d 834, 837 (Alaska 2015) (quoting *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011)).

-15- **7240**

for a protective order, Jordan's attorney argued that his client's testimony was "relevant to establish his state of mind at the time of the possession" and that the protective order "essentially den[ied] . . . Jordan a very important defense, which is actual knowledge of the amount." During discussions about jury instructions, Jordan's attorney argued that if Jordan "honestly believed that this isn't the case, that he possessed more than four ounces, then it would be a defense." And the prosecutor countered by advocating strict liability.

Although Jordan characterizes the error as structural for the first time on this appeal, his argument presents not a wholly new issue but rather a different standard of review.[51] The trial court was made aware of the alleged error — that the jury was not informed of Jordan's defense that he reasonably believed he possessed less than four ounces. We therefore consider Jordan's structural error arguments de novo rather than under the test for plain error.

### C. If Jordan's Constitutional Privacy Rights Are Implicated By His Marijuana Possession, The Failure To Instruct The Jury On All Contested Elements Of The Charged Offense Violated His Right To A Jury Trial And Was Structural Error.

Assuming that Jordan's marijuana possession implicated his constitutional privacy rights, both the failure to instruct the jury on a mental state for the amount of marijuana and the exclusion of Jordan's testimony on that subject constituted serious violations of his rights to testify and to present a defense.[52] The superior court's failure

---

[51] *LaVigne v. State*, 812 P.2d 217, 220 (Alaska 1991) (classifying question whether harmless error or automatic reversal is appropriate as "the standard of review" for constitutional violation).

[52] *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987) ("A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness."); *Wagner v. State*, 347 P.3d 109, 115-16 (Alaska 2015) (continued...)

to instruct the jury also infringed on Jordan's right to a jury trial.[53] We focus today on the jury trial right.

---

**52** (...continued)
(noting that "[a]ny ruling, even if on a mere evidentiary issue, necessarily affects a defendant's constitutional rights if it has a chilling effect on the exercise of the right to testify" but ultimately holding that defendant had to testify at trial to preserve objection to trial court's *in limine* ruling allowing prosecution to impeach him with his prior statement to police (quoting *People v. Boyd*, 682 N.W.2d 459, 464 (Mich. 2004))); *Valentine v. State*, 215 P.3d 319, 326-27 (Alaska 2009) (explaining that "a defendant's due process rights are denied when a legislative enactment substantially limits the right to present a defense" and finding such a violation where DUI statute prevented defendant from presenting "delayed-absorption evidence" to attack State's "proof that the defendant was under the influence at the time of driving," an element of the offense); *Smithart v. State*, 988 P.2d 583, 588-89 (Alaska 1999) (holding that trial court abused its discretion by excluding defendant's evidence that third party committed the crime "because identity was the central issue in the case, [so] the trial court's refusal to admit the evidence implicated [the defendant's] right to fully present his defense"); *LaVigne*, 812 at 219-20 ("The ultimate decision whether to exercise the right [to testify] . . . rests with the defendant, not with defendant's counsel. For this reason, counsel may not effectively waive a defendant's right to testify against the defendant's will.").

**53** Alaska Const. art. I, § 11; *United States v. Booker*, 543 U.S. 220, 230 (2005); *Baker v. City of Fairbanks*, 471 P.2d 386, 401 (Alaska 1970) ("[I]n any criminal prosecution . . . the accused upon demand is entitled to a jury trial.").

We treat the error here as a violation of Jordan's right to a jury trial rather than due process. *But see Khan v. State*, 278 P.3d 893, 899 (Alaska 2012) (concluding that superior court's failure to instruct on jury unanimity presented due process question). Jordan argued before the court of appeals that the omission violated his right to due process, and the court relied on due process as the basis for a mental state requirement. *Jordan v. State*, 367 P.3d 41, 52 (Alaska App. 2016). But we consider the error a jury trial violation because the error affected the completeness of the jury's verdict rather than the process by which the jury reached its verdict. *See Khan*, 278 P.3d at 899 ("If the jury is not required to agree on what criminal conduct a defendant has committed, there can be no guarantee that the jury has agreed that the defendant committed a crime beyond a reasonable doubt.").

The United States Supreme Court decided in *Neder v. United States* that the erroneous omission of an essential element from jury instructions is not structural error.[54] But Alaska's constitutional protections are not limited by the reach of their federal counterparts,[55] and we are not bound by *Neder*. Jordan urges us to reject that decision's rationale.

**1.     Past Alaska cases do not direct a particular result.**

In early cases we highlighted the breadth and importance of the right to a jury trial and automatically reversed convictions if the right was violated.[56] We explained that our broad reading of the jury trial right

> is bottomed on our belief that the right to jury trial holds a central position in the framework of American justice, and our further belief as to the primacy which must be accorded the accused's right to a fair trial against considerations of convenience or expediency to the state.[57]

On the other hand, we applied harmless error review when a trial court failed to grant a requested instruction on self-defense.[58] And we applied harmless error review to similar violations in later cases when the defendant's failure to object at trial required us to

---

[54]     527 U.S. 1, 4, 9 (1999).

[55]     *State v. Browder*, 486 P.2d 925, 936 (Alaska 1971).

[56]     *Id.* at 937-40, 943 (affirming reversal and remand for jury trial after trial court denied jury trial to defendant charged with criminal contempt and explaining that "a right to jury trial in a direct criminal contempt situation is 'necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage' "); *Baker*, 471 P.2d at 402-03 (expanding jury trial right to include prosecutions for violations of municipal ordinance and reversing conviction where defendant was denied jury trial when charged with violation of municipality's assault ordinance).

[57]     *Browder*, 486 P.2d at 937 (discussing *Baker*, 471 P.2d at 394, 396).

[58]     *Weston v. State*, 682 P.2d 1119, 1122-23 (Alaska 1984).

-18-                                                    **7240**

review the case for plain error — a necessary element of which is prejudice, i.e., that the error was not harmless beyond a reasonable doubt.[59]

The State suggests that our use of the "harmless beyond a reasonable doubt" test in analogous plain error cases requires that we treat the error here as a trial error, subject to the same review. But relying on plain error precedent alone would prevent us from ever recognizing a structural error — an error that by definition is not subject to harmless error review because it affects the entire framework of the case.[60]

Plain error cases aside, in other cases we have declined to apply harmless error review and instead automatically reversed convictions once we identified an error of constitutional dimension. In *Greenwood v. State* we automatically reversed a conviction after the superior court erroneously refused to give a jury instruction on the necessity defense.[61] Reasoning that "[t]he implausibility of a defendant's story, or any

---

[59] *See Anderson v. State*, 372 P.3d 263, 264-65 (Alaska 2016) (explaining that "effect-on-the-jury" approach should be used to determine whether lack of jury unanimity instruction was harmless beyond a reasonable doubt "under the prejudice prong of the plain error analysis"); *Khan v. State*, 278 P.3d 893, 899 (Alaska 2012) (concluding that failure to give unanimity instruction was due process violation subject to harmless error review under plain error's prejudice prong); *Thomas v. State*, 522 P.2d 528, 531-32 (Alaska 1974) (concluding that no prejudice resulted from failure to instruct jury that knowledge of nature of drug at issue was element of the offense).

[60] *See United States v. Gonzalez-Lopez*, 548 U.S.140, 148-50 (2006) (concluding that certain errors "with consequences that are necessarily unquantifiable and indeterminate unquestionably qualif[y] as structural error[s]" and discussing "speculative" nature and impossibility of harmless-error inquiries in such contexts).

[61] 237 P.3d 1018, 1027 (Alaska 2010) (concluding that defendant had presented "some evidence" of each element of necessity defense, mandating instruction on the defense).

weakness in the evidence supporting that story, is not a relevant consideration" for the judge, we held that the jury should have been given the instruction.[62]

In *Smallwood v. State*, a plain error case, the court of appeals declined to apply harmless error review to an erroneous instruction on a conclusive presumption.[63] The court held that "harmless error principles should not be applied to a jury instruction which conclusively establishes an essential element of the crime charged," because the error "essentially directed a verdict for the prosecution on one of the essential elements of the charge" and allowed "the wrong entity [to] judge[] the defendant guilty."[64] Later decisions applied this reasoning in non-plain-error cases involving erroneous presumptions.[65] But where essential elements of charged offenses have been omitted from jury instructions, the court of appeals has taken varying approaches. In *Pitka v. State* the court automatically reversed, explaining that "it is constitutional error not to instruct on an essential element of a crime 'because it lets [the jury] convict without finding the defendant guilty of that element.'"[66] But, in a later case involving an omitted

---

[62]     *Id.* at 1024.

[63]     781 P.2d 1000, 1003-05 (Alaska App. 1989).

[64]     *Id.* at 1003-04 (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986)).

[65]     *See, e.g.*, *Fielding v. State*, 842 P.2d 614, 615-16 (Alaska App. 1992) (extending *Smallwood* to non-plain-error case where judge erroneously took judicial notice and instructed jury that Glenn Highway met statutory definition of "highway," an element of the charged offense of "driving while license suspended"); *see also Rae v. State*, 884 P.2d 163, 166-67 (Alaska App. 1994) (reiterating *Smallwood*'s holding in plain error case where judge erroneously took conclusive judicial notice that defendant's license had been revoked at time of charged offense of "driving while license revoked").

[66]     995 P.2d 677, 680 (Alaska App. 2000) (quoting *United States v. Tagalicud*, 85 F.3d 1180, 1184 (9th Cir. 1996)) (alteration in original).

element, the court of appeals reversed only after concluding that the error was not harmless.[67]

We conclude that our case law in this area does not point definitively to a particular result.

### 2. Under *Neder v. United States*, omitting an essential element from a jury instruction is not structural error but rather is subject to harmless error review.

The trend of federal law is readily discernible: The Supreme Court has held that the failure to instruct a jury on an element of a crime is subject to harmless error review.[68] In *Neder v. United State*s, involving false statement, fraud, and racketeering charges, the trial court failed to instruct the jury that the materiality of the alleged falsehood was a required element of some of the offenses.[69] The Supreme Court ultimately remanded for the trial court to decide whether the error was harmless.[70] Refusing to categorize the omission as structural error, the Supreme Court reasoned that

---

[67] *Maness v. State*, 49 P.3d 1128, 1132 (Alaska App. 2002) (reversing weapons misconduct conviction upon finding that failure to instruct jury on "the nexus element of the offense" was not "harmless beyond a reasonable doubt"); *see also Lengele v. State*, 295 P.3d 931, 937 (Alaska App. 2013) (in plain error case, applying harmless error review to claim that jury instructions failed to address reasonable termination of employment as defense to criminal nonsupport); *Dailey v. State*, 65 P.3d 891, 896 (Alaska App. 2003) (applying harmless error review to instruction's incomplete description of mental state regarding defendant's duty to register as sex offender); *McKillop v. State*, 857 P.2d 358, 366 (Alaska App. 1993) (applying harmless error review to instruction's erroneous definition of intent required to convict for telephone harassment).

[68] *Neder v. United States*, 527 U.S. 1, 4 (1999).

[69] *Id.* at 6, 8.

[70] *Id.* at 25 ("[W]e remand this case to the Court of Appeals for it to consider in the first instance whether the jury-instruction error was harmless.").

"an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."[71] Pointing to its previous conclusion in *Johnson v. United States* — that the failure to instruct on an element of the offense was not necessarily prejudicial for purposes of plain error review[72] — the Court in *Neder* rejected "the argument that the omission of an element will *always* render a trial unfair."[73] The Court concluded that "improperly omitting an element from the jury can 'easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis.' "[74]

The Court distinguished *Sullivan v. Louisiana*, in which it had held that a defective "reasonable doubt" instruction amounted to structural error.[75] Unlike the error in *Sullivan*, which "vitiate[d] *all* the jury's findings," the omission of a single element affected only a single finding.[76] Although the Court noted that "[i]t would not be illogical to extend the reasoning of *Sullivan* . . . to a failure to instruct on an element of

---

[71]    *Id.* at 9 (emphasis in original).

[72]    520 U.S. 461, 470 (1997) (holding there was no prejudice for failure to instruct on materiality element — and therefore no plain error occurred — where "evidence supporting materiality was 'overwhelming' " and the issue "was essentially uncontroverted at trial").

[73]    *Neder*, 527 U.S. at 9 (emphasis in original).

[74]    *Id.* at 10 (quoting *Johnson*, 520 U.S. at 469).

[75]    508 U.S. 275, 279-82 (1993).

[76]    *Neder*, 527 U.S. at 11 (emphasis in original) (quoting *Sullivan*, 508 U.S. at 281).

the crime," it concluded that its application of harmless error review in other contexts mandated that it be applied as well to the omission of an essential element.[77]

Justice Scalia dissented, joined by Justices Souter and Ginsburg. The dissent reasoned that "[t]he constitutionally required step that was omitted here is distinctive, in that the basis for it is precisely that, absent voluntary waiver of the jury right, *the Constitution does not trust judges to make determinations of criminal guilt*."[78] In other words, applying harmless error in these circumstances simply compounds the original error:

> The Court's decision today is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved to the jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury).[79]

Justice Scalia continued, "A court cannot, no matter how clear the defendant's culpability, direct a guilty verdict."[80] He therefore questioned "why, if denying the right to conviction by jury is structural error, taking *one* of the elements of the crime away from the jury should be treated differently from taking *all* of them away—since failure

---

[77] *Id.* at 11, 15 ("Although this strand of the reasoning in *Sullivan* does provide support for Neder's position, it cannot be squared with our harmless-error cases."); *see also California v. Roy*, 519 U.S. 2, 3, 5 (1996) (applying harmless error to federal habeas case involving omitted jury instruction); *Carella v. California*, 491 U.S. 263, 264, 266 (1989) (applying harmless error to improper instruction); *Pope v. Illinois*, 481 U.S. 497, 499-502 (1987) (applying harmless error to improper instruction).

[78] *Neder*, 527 U.S. at 32 (Scalia, J., dissenting) (emphasis in original).

[79] *Id.*

[80] *Id.* at 33 (citing *Carpenters v. United States*, 330 U.S. 395, 408 (1947); *Rose v. Clark*, 478 U.S. 570, 578 (1986); *Arizona v. Fulminante*, 499 U.S. 279, 294 (1991) (White, J., dissenting)).

to prove one, no less than failure to prove all, utterly prevents conviction."[81]  Justice Scalia also criticized the *Neder* majority as tacitly retreating from *Sullivan*: "Whereas *Sullivan* confined appellate courts to their proper role of reviewing *verdicts*, the Court today puts appellate courts in the business of reviewing the defendant's *guilt*."[82]

### 3. The dissent in *Neder v. United States* is more consistent with Alaska's constitutional protections.

"Although we carefully consider and 'find substantial guidance in cases interpreting the United States Constitution,' we are not bound by those decisions when interpreting state constitutional law."[83]  We decide that the failure to instruct the jury on an essential and contested element of a crime is structural error; we thus reject *Neder*. We find the *Neder* dissent compelling.  The Alaska Court of Appeals noted almost thirty years ago that the omission of a contested element from jury instructions "essentially direct[s] a verdict for the prosecution on one of the essential elements of the charge";[84]

---

[81]     *Id.* (emphasis in original).

[82]     *Id.* at 39 (emphasis in original).

[83]     *Majaev v. State*, 223 P.3d 629, 632 (Alaska 2010) (quoting *Anchorage Police Dep't Emps. Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 550 (Alaska 2001)).

[84]     *Smallwood v. State*, 781 P.2d 1000, 1003 (Alaska App. 1989).

we agree with Justice Scalia that such a result seriously undermines the jury-trial right.[85] Other states have rejected *Neder* for the same reason.[86]

The State points out that negligence is an objective standard, "[a]nd Alaska's appellate courts regularly review [trial court] records to determine whether a person's subjective belief is objectively reasonable."[87] But the jury's role in a criminal case is not limited to deciding those facts that cannot be objectively determined by the

---

[85] *Neder*, 527 U.S. at 32 (Scalia, J., dissenting) (explaining that failure to instruct on essential element of crime charged "is distinctive, in that the basis for it is precisely that, absent voluntary waiver of the jury trial right, *the Constitution does not trust judges to make determinations of criminal guilt*" (emphasis in original)); *see also Rae v. State*, 884 P.2d 163, 167 (Alaska App. 1994) ("[Taking conclusive judicial notice of an element of a criminal charge] is reversible error without regard either to whether there was an objection from the defense, or to whether the defendant suffered any prejudice other than having had his guilt adjudged by the wrong entity." (citing *Fielding v. State*, 842 P.2d 614 (Alaska App. 1992))).

[86] The New Hampshire Supreme Court rejected *Neder*, concluding that because "[t]he jury was never instructed on the definition of deadly weapon[,] . . . its verdict was necessarily incomplete and 'akin to the direction of a verdict for the prosecution on an element of the offense charged,' " a structural error. *State v. Kousounadis*, 986 A.2d 603, 615 (N.H. 2009) (quoting *State v. Williams*, 581 A.2d 78, 80 (N.H. 1990)). The Mississippi Supreme Court applied similar logic, concerned that "[e]ngaging in harmless error analysis here would mean determining [the defendant's] guilt without a jury ever deciding whether he committed a single element of the crime." *Harrell v. State*, 134 So. 3d 266, 274 (Miss. 2014).

[87] The State also argues that this was a "mistake-of-law" defense appropriate for the judge to decide, not the jury. But a "mistake-of-law" defense "assert[s] that a defendant did not understand the criminal consequences of certain conduct." *Mistake of law*, BLACK'S LAW DICTIONARY (10th ed. 2014). We agree with Jordan that the issue was for the jury as a "mistake-of-fact" defense: He correctly understood the law but mistakenly believed the amount he possessed was less than four ounces. *Mistake of fact*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The defense asserting that a criminal defendant acted from an innocent misunderstanding of fact rather than from a criminal purpose.").

judge. And as Jordan points out, the jury had no opportunity to decide in the first instance whether his defense was a reasonable one: The jury was not informed that reasonableness was an issue, Jordan did not testify about it, and "[n]o jury would find that a defendant was reasonably mistaken about the weight of his crop if the jury did not hear him say he was actually mistaken" in his testimony. Again, assuming that constitutional privacy protections apply to Jordan's marijuana possession in this case, there was a contested issue whether Jordan was at least negligent with regard to the weight of the marijuana in his possession, and it should have been for the jury to decide.[88]

Applying harmless error review to the omission of a contested element from a jury instruction would also present practical problems, as the Supreme Court observed in *Sullivan v. Louisiana*.[89] The Supreme Court concluded that — because "hypothesiz[ing] a guilty verdict that was never in fact rendered" would "violate the jury-trial guarantee" — the relevant inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been entered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error."[90] If a valid verdict

---

[88]    *See United States v. Booker*, 543 U.S. 220, 230 (2005) ("[The U.S.] Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." (quoting *United States v. Gaudin*, 515 U.S. 506, 511 (1995)))*; cf. Noffke v. Perez*, 178 P.3d 1141, 1152 (Alaska 2008) ("Generally, questions of [civil] negligence are left to the jury to decide.").

[89]    508 U.S. 275 (1993).

[90]    *Id.* at 280 (emphasis in original).

was never entered, "the question whether the *same* [guilty] verdict . . . would have been rendered absent the constitutional error is utterly meaningless."[91]

*Sullivan*'s approach to harmless error scrutiny mirrors the formula we apply in Alaska. In *Anderson v. State* we rejected a "guilt-based" approach, which "asks the counterfactual question whether the defendant would have been convicted in a hypothetical trial absent the error."[92] We follow instead the "effect-on-the-jury" approach, which "asks the historical question whether the error was a substantial factor in the jury's verdict."[93] Under this formula, as in *Sullivan*, harmless error review is ineffective for reviewing an omitted element from the instructions because there "is no *object*, so to speak, upon which harmless-error scrutiny can operate"[94] — the jury reached no verdict on the element omitted from its consideration.

This practical difficulty is highlighted by the harmless error approach the court of appeals was obliged to take in this case. Because there was no way to determine whether something the jury did not consider was a "substantial factor" in its verdict, the court of appeals had to examine the evidence presented and hypothesize a verdict: "Given the great discrepancy between the statutory limit (four ounces) and the amount of usable marijuana harvested from Jordan's plants (slightly more than a pound and a

---

[91]     *Id.* at 280 (emphasis in original).

[92]     372 P.3d 263, 265 (Alaska 2016) (quoting *The Supreme Court, 2005 Term — Leading Cases*, 120 HARV. L. REV. 192, 193 (2006)).

[93]     *Id.* (quoting *The Supreme Court, 2005 Term — Leading Cases*, 120 HARV. L. REV. 192, 193 (2006)); *see also Neder v. United States*, 527 U.S. 1, 27 (1999) (Stevens, J., concurring) ("There is . . . a distinction of true importance between a harmless-error test that focuses on what the jury did decide, rather than on what appellate judges think the jury would have decided if given an opportunity to pass on an issue.").

[94]     *Sullivan*, 508 U.S. at 280 (emphasis in original).

half), we conclude that no reasonable jury could have had a reasonable doubt on this question."[95] The court of appeals has previously acknowledged the difficulty in such an approach: "[I]f we are to adhere to the principle that jury instruction errors do not automatically require reversal, and that these errors can potentially be harmless, this is the only practical way to perform the harmless error analysis."[96] Our holding today eliminates the artificiality of this kind of appellate review.

### D. If A Mental State Regarding Weight Was An Essential Element Of The Crime, Then The Exclusion Of Jordan's Testimony Was Not Harmless Beyond A Reasonable Doubt.

As noted above, we agree with the court of appeals that it is error to prevent the defendant from testifying about a mental state that is an element of the charged offense. We have long recognized that "[n]o defendant requesting to testify should be deprived of exercising that right and conveying his version of the facts to the court or jury."[97] We also recognize "that there are myriad reasons why an accused may wish to testify in his own behalf" besides the content of his testimony, including a faith in his own persuasiveness, a hope that the jury will look favorably on his decision to take the stand, and a simple desire to "tell his side in a public forum," perhaps even directing his speech "over the head[s] of judge and jury, to a larger audience."[98] Thus, "a judge's skepticism regarding the truthfulness or credibility of a witness's proposed testimony is

---

[95] *Jordan v. State*, 367 P.3d 41, 53 (Alaska App. 2016).

[96] *Anderson v. State*, 337 P.3d 534, 540 (Alaska App. 2014).

[97] *Hughes v. State*, 513 P.2d 1115, 1119 (Alaska 1973).

[98] *LaVigne v. State*, 812 P.2d 217, 221 (Alaska 1991) (quoting *Wright v. Estelle*, 572 F.2d 1071, 1078 (5th Cir. 1978) (en banc) (Godbold, J., dissenting on petition for rehearing)).

not a valid reason for the judge to exclude that testimony from the trial. . . . [I]t is the jury's role to assess and resolve questions of truthfulness and credibility."[99]

The court of appeals concluded that although it was error to exclude Jordan's testimony, the error was harmless beyond a reasonable doubt because no reasonable jury could have accepted it.[100]  Harmless error review in cases like this one is required by *LaVigne v. State*, in which we discussed whether harmless error review was appropriate for a violation of the defendant's right to testify or, rather, whether the error "compels the *per se* reversal of [a] conviction."[101]  We decided that harmless error review was appropriate once the defendant met "an initial burden to show he would have offered relevant testimony had he been allowed to testify at his trial."[102]  The burden then moves to the State "to show that denial of [the defendant's] constitutional right was harmless error beyond a reasonable doubt."[103]

Jordan asks us to overrule *LaVigne* and hold that the erroneous exclusion of a defendant's testimony is structural error.  We find it unnecessary to do that in this case because we conclude that the exclusion of Jordan's testimony was not harmless beyond a reasonable doubt.

In *LaVigne* we emphasized that the burden on the State to prove harmless error beyond a reasonable doubt "is a heavy one."[104]  "This is largely due to the limited

---

[99]    *Jordan*, 367 P.3d at 53.

[100]    *LaVigne*, 812 P.2d at 220-22.

[101]    *Id.*

[102]    *Id.* at 221.

[103]    *Id.*

[104]    *Id.*

ability of appellate courts to judge accurately the possible effect on the jury of a defendant's appearance on the stand."[105] We again stressed the difference between the content of the defendant's testimony — which "an appellate court can competently weigh" — and "the possible impact upon the jury of factors such as the defendant's willingness to mount the stand rather than avail himself of the shelter of the Fifth Amendment, his candor and courtesy (or lack of them), his persuasiveness, [and] his respect for court processes."[106] We observed that "[a]ppellate attempts to appraise [the] impact upon the jury of such unknown and unknowable matters is purely speculative."[107] For that reason, we concluded in *LaVigne* that "there will be relatively few cases in which the reviewing court can confidently assert that the denial of the right to testify was so insignificant as to constitute harmless error beyond a reasonable doubt."[108]

We are unable to make that confident assertion in this case. It may well be that the content of Jordan's proposed testimony — that he reasonably believed the marijuana in his possession, when processed, would weigh less than four ounces when it actually weighed more than 25 ounces — was objectively unreasonable. But the reasonableness of Jordan's belief was essentially his entire defense. Only he could testify about what he subjectively believed; if a mental state was an element of the offense, his failure to testify about it would leave an obvious gap in his defense. The difference between four ounces and 25 ounces seems great, but it can only seem greater when no one testifies that a mistaken estimate is reasonable in the context of determining the marijuana's weight: whether by taking live plants and removing the roots before

---

[105] *Id.*

[106] *Id.* (quoting *Wright*, 572 F.2d at 1082 (Godbold, J., dissenting)).

[107] *Id.* (quoting *Wright*, 572 F.2d at 1082 (Godbold, J., dissenting)).

[108] *Id.* at 221-22.

weighing them (for the statutory one-sixth method), or by drying the plants and weighing the result (as the police did here). Although Jordan may have had too much faith in his ability to persuade, we cannot say with confidence that the jury would have rejected his testimony. We conclude, therefore, that — assuming Jordan's constitutional privacy rights are implicated by his marijuana possession — the error in excluding his testimony was not harmless beyond a reasonable doubt.

E.     **Remand Is Necessary For A Determination Whether Jordan's Marijuana Possession Was Protected By The Constitutional Privacy Right**.

We reiterate that the foregoing discussion of the trial errors in this case assumes that Jordan's possession of marijuana in the detached greenhouse falls under the constitutional privacy protections we have applied in the context of the home.[109] Because the court of appeals concluded that the errors were harmless beyond a reasonable doubt, it could assume, for purposes of discussing Jordan's case, that the constitutional protections "apply to Jordan's possession of marijuana in a detached greenhouse on his residential property."[110]

But we conclude based on the same assumption that the omission of a contested element of an offense from the jury instructions is structural error and that the exclusion of Jordan's testimony about that element is not harmless beyond a reasonable doubt. The assumption therefore matters to our disposition of the case. If Jordan's

---

[109]     *See Jordan v. State*, 367 P.3d 41, 48 (Alaska App. 2016) (noting that "[i]n Jordan's case, the marijuana was found on his residential property, but in a detached greenhouse — a situation that is arguably not covered by" cases explaining that constitutional right of privacy protects personal possession of marijuana in the home (citing *Ravin v. State*, 537 P.2d 494 (Alaska 1975); *Noy v. State*, 83 P.3d 545 (Alaska App. 2003))).

[110]     *Id.*

marijuana possession was not subject to the constitutional right to privacy, then he was not constitutionally entitled to a jury instruction that included a mental state as to weight, and his testimony about his mental state could likely have been excluded on relevancy grounds. Whether constitutional rights are implicated depends on the extent to which Jordan had the same reasonable expectation of privacy in the greenhouse that he had in his home. Since our decision entitles Jordan to a new trial if in fact the constitutional protections apply, we must remand to the superior court for its consideration of this issue.

## V.    CONCLUSION

Because — assuming that Jordan's constitutional privacy rights were implicated by his marijuana possession — the omission from jury instructions of a contested and essential element of the offense was structural error, and the exclusion of the defendant's testimony was not harmless beyond a reasonable doubt, we REVERSE the court of appeals' decision affirming Jordan's conviction. We REMAND to the superior court to consider whether Jordan's constitutional privacy rights were implicated by his marijuana possession. If they were, he is entitled to a new trial.

BOLGER, Justice, with whom STOWERS, Chief Justice, joins, dissenting.

There is a basic problem with this case because the court of appeals rendered an opinion that may not apply. That court concluded that, in cases where the defendant has a constitutional privacy interest, the defendant may not be convicted of violating the former statute criminalizing possession of four ounces or more of marijuana unless there is a showing of negligence as to this amount.[1] This conclusion may not apply to this case because the court of appeals did not decide whether Antonio Jordan had a privacy interest in the marijuana he was growing in his detached greenhouse.[2]

This court follows suit with the foregoing opinion on whether the failure to instruct on a "contested and essential element" of an offense is a structural error. This is a hypothetical question in this case because we do not know whether negligence is an "essential element" of this offense. We do not know whether this mens rea element is required because the court's opinion does not decide whether Jordan had a constitutional privacy interest in the marijuana he was growing in his detached greenhouse.

The reason this issue has never been decided is that Jordan did not raise it in the superior court. Jordan did not argue that his constitutional right to privacy supported his right to testify that he believed there was a smaller amount of marijuana growing in his greenhouse. His proffered testimony was based on his interpretation of the statute. And Jordan did not argue that his right to privacy required the State to prove that he should have known that he was over the statutory limit. Instead, Jordan's counsel stated that he had no objection to the trial court's instruction on the elements of this offense. Jordan's argument that the State should be required to prove knowing

---

[1]     *Jordan v. State*, 367 P.3d 41, 52 (Alaska App. 2016).

[2]     *Id.* at 48.

-33-                                                          7240

possession was based on his interpretation of the language of the statute. So there was nothing about Jordan's arguments to the superior court that would have alerted the judge that he was raising a constitutional privacy issue.

Jordan argues that this default is irrelevant. At oral argument, he argued that a defendant would have a right to a negligence instruction despite his failure to ask for one, even if the evidence had shown that he had a ton of marijuana in a warehouse.

I disagree with this position. Alaska Criminal Rule 30(a) requires a party to make any requests or objections regarding the jury instructions before the jury retires to deliberate. A party must make an argument that gives the trial judge an "identifiable opportunity" to rule on the party's position.[3] Even a timely objection will not preserve a substantially different argument for appeal.[4] In this case, Jordan did not make any argument apprising the trial court that the elements of the offense should be modified to accommodate his right to privacy. Therefore, the appellate courts should decline to address Jordan's constitutional arguments.

---

[3]     *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 816 (Alaska 2005) (quoting *Manes v. Coats*, 941 P.2d 120, 125 n.4 (Alaska 1997)); *Heaps v. State*, 30 P.3d 109, 113-14 (Alaska App. 2001).

[4]     Jones v. Bowie Indus., Inc., 282 P.3d 316, 339 (Alaska 2012); *Brown v. Ely*, 14 P.3d 257, 261-62 (Alaska 2000); *Post v. State*, 580 P.2d 304, 308 (Alaska 1978); *Linscott v. State*, 157 P.3d 1056, 1059 (Alaska App. 2007).